Farid F. Shafik, MD
357 Andrew St.
Southington, CT 06489
Tel: 860 426 0969
Fax: 860 621 7843
fshafik@msn.com

FEB 16 2023 P 2:57
FILED-USDC-CT-HARTFORD

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT-HARTFORD COUNTY

Farid F. Shafik, MD, Pro Se,

       Plaintiff,

vs.

ASTON MARTIN LAGONDA OF NORTH AMERICA
INC, AND DOES 1 THROUGH 20, INCLUSIVE,

       Defendant

Case No.: Number   **23cv 00207**

COMPLAINT FOR DAMAGES

## COMPLAINT, REQUEST FOR DECLARATORY RELIEF

## JURY DEMAND and RESERVATION OF RIGHTS

NOW COME the above-named Plaintiff, Farid F. Shafik, MD, Pro Se, and for this Complaint

against the Defendants herein, each and every one of them, states as follows:

### PRELIMINARY ALLEGATIONS:

Plaintiff herein resides at 357 Andrews Street, in the Town of Southington, State of Connecticut,

and is a "Consumer" as that term is commonly used.

The Defendant Aston Martin of Lagonda North America, a corporation, qualified and registered to

do business in County of Hartford—67 Burnside Avenue, East Hartford, Connecticut 06108-3408, (hereinafter

referred to as "Defendant" "Aston Martin" or "Dealer" or "Manufacturer") is a corporation engaged in "trade or

commerce," solicitation of sales through electronic commerce and/or conducted business in the State of Connecticut.

The Defendant is a corporation engaged in "trade or commerce," solicitation and/or conducts

business in the State of Connecticut, as an automobile "dealer" and "warrantor."

Defendant blatantly leased a vehicle to Plaintiff and perpetrated a violation of the The Magnuson-

Moss Warranty Act, 15 USC 2301 et seq., specifically:

1.   Breach of Implied Warranty of Merchantability under the federal Magnuson-Moss Act, pursuant to the CT

COMPLAINT FOR DAMAGES - 1

1    Uniform Commercial Code CGS Secs. 42a-2-314 to 316.

2    2.  Breach of Express Warranty under the Magnuson-Moss Act., pursuant to CT Uniform Commercial Code

3        CGS Sec. 42a-2-313.

4    3.  Additionally, and concurrently, Breach of CT GS Sec. 42-179: *Automobile Warranties* (aka, the "Lemon

5        Law") of the State of Connecticut

6                JURY TRIAL DEMANDED.

7                PLAINTIFF FARID SHAFIK, Pro Se, an individual, hereby alleges and complains as follows:

8                **GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

9            1.  Defendant, ASTON MARTIN LAGONDA OF NORTH AMERICA, INC. a corporation

10               doing business in the County of San Diego, State of California, and, in the County of Hartford

11               in the State of Connecticut, at all times relevant herein, was/is engaged in the manufacture,

12               sale, distribution, and/or importing of ASTON MARTIN motor vehicles and related

13               equipment.

14           2.  The true names and capacities, whether individual, corporate, associate, or otherwise, of the

15               Defendants, Does 1 through 20, inclusive, are unknown to Plaintiff who therefore sues these

16               Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to set

17               forth their true names and capacities when they have ascertained them. Further, Plaintiff is

18               informed and believes, and thereon alleges, that each of the Defendants designated herein as a

19               "Doe" is responsible in some manner for the events and happenings herein referred to and

20               caused injury and damage to Plaintiff as herein alleged.

21           3.  Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned,

22               Defendants, and each of them, were the agents, servants, and/or employees of each of their

23               Co-Defendants. Plaintiff is informed and believes, and thereon alleges, that in doing the

24               things hereinafter alleged Defendants, and each of them, were acting in the course and scope

25               of their employment as such agents, servants, and/or employees, and with the permission,

26               consent, knowledge, and/or ratification of their Co-Defendants, principals, and/or employers.

27

28

COMPLAINT FOR DAMAGES - 2

4.  On or about September 1, 2019, Defendants, Manufacturer and Does 1 through 20 inclusive, manufactured and/or distributed into the stream of commerce a new 2019 Aston Martin DB11, VIN: SCFRMFCW7KGM06514 (hereinafter referred to as the "Vehicle") for its eventual sale/purchase in the States of California and/or Connecticut.

5.  On or about October 1, 2019, Plaintiff leased, for personal, family, and/or household purposes, the new subject Vehicle from the Defendant. The lease agreement is in the possession of both the Plaintiff and the Defendant.  See executed lease agreement as Exhibit I.

6.  Lease (the term "lease" and "purchase" will be used interchangeably thereafter) was addressed to the Plaintiffs residence in Connecticut, and executed, by Plaintiff in the State of Connecticut.

7.  Subject Vehicle was registered in the State of Connecticut, see Exhibit 2.

8.  The subject Vehicle was/is a "new motor vehicle" under the Magnuson-Moss Warranty Act.

9.  Along with the lease of the Vehicle, Plaintiff received written warranties and other express and implied warranties including, but not limited to, warranties from Manufacturer and Seller that the Vehicle and its components would be free from all defects in material and workmanship; that the Vehicle would pass without objection in the trade under the contract description; that the Vehicle would be fit for the ordinary purposes for which it was intended; that the Vehicle would conform to the promises and affirmations of fact made; that Defendants, and each of them, would perform any repairs, alignments, adjustments, and/or replacements of any parts necessary to ensure that the Vehicle was free from any defects in material and workmanship; that Defendants, and each of them, would maintain the utility of the Vehicle for Three (3) years or Unlimited miles and would conform the Vehicle to the

COMPLAINT FOR DAMAGES - 3

1    applicable express warranties. (A copy of the written warranty is in the possession of the

2    Defendants).

3    10.  Plaintiff has duly performed all the conditions on Plaintiff's part under the purchase

4    agreement and under the express and implied warranties given to plaintiff, except insofar as the

5    acts and/or omissions of the Defendants, and each of them, as alleged herein, prevented and/or

6    excused such performance.

7

8    11.  Plaintiff has delivered the Vehicle to the Manufacturer's authorized service and repair

9    facilities, agents and/or dealers, including Seller, on at least One (1) separate occasion resulting in

10   the Vehicle being out of service, for at least Thirty (30) days, by reason of repair of

11   nonconformities. Repair Orders/Invoices are in the possession of Defendants.

12

13   12.  By way of example, and not by way of limitation, the defects, malfunctions, mis-adjustments,

14   and/or nonconformities with Plaintiff's Vehicle include the following: Plaintiff has submitted

15   the subject Vehicle for defects and malfunctions, most notably—but not limited to-- issues

16   with Campaign QN-01-1280 for Roof Pump, and air bag faulty warning.  Vehicle was

17   retained by Defendant from May 6, 2020 to June 16, 2020—41 days—for repair of the defect.

18   See the repair order labeled Exhibit 3-A.  The Vehicle was also repaired for Campaign SA-

19   30-1571 from May 10, 2022 to June 1, 2022, for amongst other things, steering module failure

20   and ignition module failure (see Exhibit 3-B).  The Vehicle was also repaired from July 13,

21   2022 to July 27, 2022 for, amongst other things, faulty air bag issues (again), the ignition

22   module (again) (See Exhibit 3-C.)]  These more significant repairs, amongst others not noted

23   in this Complaint, demonstrate pervasive defects, malfunctions and/or nonconformities with

24   the Vehicle.  The attempted repair noted in Exhibit 3-C was the final attempt prior to the

25   return of the Vehicle prior to the termination of the lease.

26

27   13.  Defendant also negligently, with grave danger to Plaintiff, and with flagrant disregard to

28   federal safety guidelines, failed to notify Plaintiff, or repair, two recall campaigns mandated

COMPLAINT FOR DAMAGES - 4

by the National Highway Traffic Safety Administration ("NHTSA").  Specifically, NHTSA Recall Campaign#:   19V806000 issued November 12, 2019 and NHTSA Recall Campaign #: 20V604000 issued October 2, 2020 (see https://www.nhtsa.gov/vehicle/2019/ASTON%252520MARTIN/DB11#recalls).  The noted campaigns by the NHTSA directly cite the airbags, and manufacturing defects.  A serious issue.  Plaintiff was never notified, or made aware, according to NHTSA guidelines of such defects.  Nor do the purported, or attempted repairs in Exhibits 3-A to 3-C, inclusive reflect the NHTSA recall campaigns.  The issues cited by Plaintiff in Exhibits 3-A, 3-B and 3-C reflect other issues related to other defects, and on two occasions other malfunctions related to the airbags.

14. Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-authorized service and repair facility, Plaintiff notified Defendants, and each of them, of the defects, malfunctions, mis adjustments, and/or nonconformities existent with the Vehicle and demanded that Manufacturer or its representatives repair, adjust, and/or replace any necessary parts to conform the Vehicle to the applicable warranties.

15. Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer- authorized service and repair facility, Defendants, and each of them, represented to Plaintiff that they could and would conform the Vehicle to the applicable warranties, that in fact they did conform the Vehicle to said warranties, and that all the defects, malfunctions, mis-adjustments, and/or nonconformities have been repaired; however, Manufacturer or its representatives failed to conform the Vehicle to the applicable warranties because said defects, malfunctions, mis-adjustments, and/or nonconformities continue to exist even after a reasonable number of attempts to repair was given.

16. Plaintiff retained legal counsel, The Barry Law Firm, and commenced "lemon law" action in the State of California. Defendant failed to respond to the Lemon Law filing.  Plaintiff

COMPLAINT FOR DAMAGES - 5

commenced legal action (see attached Exhibit 4) with the Superior Court of California-
County of San Diego (the "Court").  Defendant deposed Plaintiff on May 13,2021, at 1224
Mill St., Building B, Suite 224, East Berlin, CT 06023.  Rosalie A. Kramm, CSR No. 5469
was the stenographer that documented and certified the deposition.  The Defendant's attorney,
Erin Talent, Esq., Lehrman Law Group, 12121 Willshire Blvd, Suite 1300, Los Angeles, CA
90025 deposed Plaintiff for over 5 hours.  Defendant deposed Plaintiff with 153 pages of
testimony and exhibits.  Both Defendant and Plaintiff have copies of the deposition, and its
contents are incorporated herein, as fact.  Thereafter, Defendant, unbeknownst to the Plaintiff,
filed Motion for Summary Judgement alleging a lack of jurisdiction in the State of California.
In Defendant's motion, See Exhibit 5, with pertinent provisions highlighted, and incorporated
herein.  Defendant, amongst other things, stated that '…while Plaintiff may have legitimate
basis for the allegations and complaints, the Court lacks jurisdiction to review the
matter…Plaintiff is a resident of Connecticut and action should be initiated there….'

17. Unbeknownst to Plaintiff, the Court granted the Motion for Summary Judgement due to the
Plaintiff's counsel not preparing a response to the Defendant's Motion and affirming the
jurisdictional issue (see Exhibit 6.)  Plaintiff's counsel also failed to inform Plaintiff of these
matters.[1]

18. Plaintiff retained the law firm, Lemberg Law, 43 Danbury Rd, Wilton, CT 06897, and
initiated action under Connecticut Lemon Law (see Exhibit 7).  Timothy Clarke, Esq, from
the Connecticut Department of Consumer Protection—Department of the Automobile
Settlement Program—erroneously stating '…that there is no jurisdiction in Connecticut,
stating the car was leased and registered in California…' (see Exhibit 8).  This was an

---

[1] Plaintiff has initiated a complaint against The Barry Law Firm in California for its failure to notify Plaintiff of the court actions.

COMPLAINT FOR DAMAGES - 6

1    erroneous conclusion, as the lease was addressed and executed in the State of Connecticut,

2    and the automobile registration is Connecticut (see Exhibit 2, noted above)

4    19. Plaintiff returned vehicle upon the termination of the lease period on October 8, 2022, (See

5    Exhibit 9.)

7    20. The amount controversy exceeds TWENTY-FIVE THOUSAND DOLLARS ($25,000.00),

8    exclusive of interest and costs, for which Plaintiff seeks judgment against Defendants,

9    together with equitable relief. In addition, Plaintiff seeks damages from Defendants, and each

10    of them, for incidental, consequential, exemplary, and actual damages including interest,

11    costs, and other expenditures.  See Exhibit 10 for the preliminary listing of expenditures and

12    damages.

13    **FIRST CAUSE OF ACTION**

14    ***Applicability of the Magnuson Moss Act and Jurisdiction***

15    Plaintiff realleges each and every paragraph, 1 through 20, and incorporates them by this reference

16  as though fully set forth herein.

18    The Plaintiff, is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter

19  referred to as the "Warranty Act"), 15 U.S.C. 2301(3). The Dealer is a "seller" and "warrantor" as defined by the

20  Warranty Act, 15 U.S.C. 2301(4), (5).

22    The Manufacturer is a "seller" and "warrantor" as defined by the Warranty Act, 15 U.S.C.

23  2301(4), (5).

25    The Vehicle in question is a "consumer product" as defined in the Warranty Act, 15 U.S.C.

26  2301(1).

28

COMPLAINT FOR DAMAGES - 7

1    The express warranties given by Dealer and/or Manufacturer and/or required by statute to be given

2    by the Dealer and/or Manufacturer, pertaining to the Vehicle are "written warranties" as defined in the Warranty

3    Act, 15 U.S.C. 2301(6).

4

5    That this sale/lease transaction is subject to the provisions and regulations of the Magnuson-Moss

6    Warranty Act (14 U.S.C. 2301, et seq).

7

8    Pursuant to said Act, certain language is required to be included in the contract of sale as set forth

9    in the prior allegations set forth herein.

10

11    The above-described actions, including, but not limited to, the failure of Defendants to honor the

12    warranty and/or to seek arbitration contrary to the Warranty Act, and/or to ignore the rules and regulations constitute

13    breach of the written warranties and of the Warranty Act.

14

15    ***Breach of Implied Warranty of Merchantability under Magnuson Moss Act***

16    ***Against all Defendants***

17

18    Plaintiff realleges each, and every paragraph, 1 through 20, and incorporates them by this reference as

19    though fully set forth herein.

20

21    The distribution and sale of the Vehicle was accompanied by the Manufacturer implied warranty that the

22    Vehicle was merchantable.

23

24    Furthermore, Defendants, and each of them, impliedly warranted, inter alia, that the Vehicle would pass

25    without objection in the trade under the contract description, that the Vehicle was fit for the ordinary purposes for

26    which it was intended; that the Vehicle was adequately assembled; and/or that the Vehicle conformed to the

27    promises or affirmations of fact made to Plaintiff.

28

COMPLAINT FOR DAMAGES - 8

1           As evidenced by the defects, malfunctions, mis adjustments, and/or nonconformities alleged

2  herein, the Vehicle was not merchantable because it did not have the quality that a buyer would reasonably expect,

3  because it could not pass without objection in the trade under the contract description; because it was not fit for the

4  ordinary purposes for which it was intended; because it was not adequately assembled; and/or because it did not or

5  could not be conformed to the promises or affirmations of fact made to Plaintiff.

6

7           Upon discovery of the Vehicle's nonconformities, Plaintiff took reasonable steps to notify

8  Defendants, and each of them, within a reasonable time that the Vehicle did not have the quality that a buyer would

9  reasonably expect and, further, justifiably revoked acceptance of the nonconforming Vehicle.

10

11           Plaintiff hereby gave, and gives, written notice and justifiably revokes acceptance of the

12  nonconforming Vehicle under the Commercial Code sections 42a-2-314 to 316. Plaintiff further demands that the

13  Manufacturer refund all the money expended by Plaintiff (see Exhibit 10), and/or pay damages under the

14  Commercial Code sections 42a-2-314 to 316. Defendants, and each of them, have, however, refused to comply.

15

16           Plaintiff hereby gives written notice and makes demand upon Manufacturer for restitution,

17  pursuant to Magnuson-Moss. Defendants, and each of them, knew of their obligations under Magnuson-Moss;

18  however, despite Plaintiff's demand, Defendants and each of them, have intentionally failed and refused to make

19  restitution or replacement pursuant to Magnuson Moss.

20

21           As a result of the acts and/or omissions of the Defendants, and each of them, Plaintiff has

22  sustained damage in the amount actually paid or payable under the contract, plus prejudgment interest thereon at the

23  legal rate. Plaintiff will seek leave to amend this Complaint to set forth the exact amount thereof when that amount

24  is ascertained.

25

26           As a further result of the actions of Defendants, and each of them, Plaintiff has sustained

27  incidental and consequential damages in an amount yet to be determined, plus interest thereon at the legal rate.

28

COMPLAINT FOR DAMAGES - 9

1   Plaintiff will seek leave to amend this Complaint to set forth the exact amount of incidental damages when that

2   amount is ascertained.

3

4           As a direct result of the acts and/or omissions of Defendants, and each of them, and in pursuing

5   Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to Magnuson-Moss, Plaintiff, in

6   addition to his other remedies, is entitled to the recovery of his attorneys' fees based upon actual time expended and

7   reasonably incurred, in connection with the commencement and prosecution of this action.

8

9           ***Breach of Express Warranty under Magnuson Moss Act Against all Defendants***

10          Plaintiff realleges each and every paragraph, 1 through 20, and incorporates them by this reference

11   as though fully set forth herein.

12          The Vehicle had defects, malfunctions, mis-adjustments, and/or nonconformities covered by the

13   warranty that substantially impaired its value, use, or safety to Plaintiff.

14          Plaintiff delivered the Vehicle to Manufacturer or its authorized repair facilities for Defendants,

15   and each of them, failed to properly service or repair the Vehicle, as demonstrated in the Exhibits. The acts and/or

16   omissions of Defendants, and each of them, in failing to perform the proper repairs, part replacements, and/or

17   adjustments, to conform the Vehicle to the applicable express warranties constitute a breach of the express

18   warranties that the Manufacturer provided to Plaintiff, thereby breaching Defendants' obligations under Magnuson-

19   Moss.

20      Defendants, and each of them, failed to perform the necessary repairs and/or service in good and

21   workmanlike manner. The actions taken by Defendants, and each of them, were insufficient to make the Subject

22   Vehicle conform to the express warranties and/or proper operational characteristics of like Vehicles, all in violation

23   of Defendants' obligations under Magnuson-Moss.

24

25          Plaintiff hereby gives written notice and makes demand upon Manufacturer for restitution,

26   pursuant to Magnuson-Moss. Defendants and each of them, knowing their obligations under Magnuson-Moss, and

27   despite Plaintiff's demand, failed and refused to make restitution or replacement according to the mandates of

28   Magnuson-Moss. The failure of Defendants, and each of them, to refund the price paid and payable or to replace the

COMPLAINT FOR DAMAGES - 10

1   Vehicle was intentional and justifies an award of a Civil Penalty in an amount not to exceed two times Plaintiffs

2   actual damages.

3

4          As a result of the acts and/or omissions of Defendants, and each of them, and pursuant to the

5   provisions of the Magnuson-Moss, Plaintiff is entitled to restitution of the amount actually paid or payable under the

6   contract, at Plaintiffs election, plus prejudgment interest thereon at the legal rate. Plaintiff will seek leave of Court to

7   amend this Complaint to set forth the exact amount of restitution and interest, upon election, when that amount has

8   been ascertained.

9

10         Additionally, as a result of the acts and/or omissions of Defendants, and each of them, and pursuant to

11  Magnuson-Moss, Plaintiff has sustained and is entitled to consequential and incidental damages in amounts yet to be

12  determined, plus interest thereon at the legal rate. Plaintiff will seek leave of the court to amend this complaint to set

13  forth the exact amount of consequential and/or incidental damages, when those amounts have been ascertained.

14

15         As a direct result of the acts and/or omissions of Defendants, and each of them, and in pursuing Plaintiffs

16  claim, it may be necessary for Plaintiff to retain legal counsel. Pursuant to Magnuson-Moss, Plaintiff, in addition to

17  other remedies, if legal counsel is retained, Plaintiff is entitled to the recovery of his attorneys' fees based -upon

18  actual  time expended  and reasonably  incurred, in connection with the commencement and prosecution of this

19  action.

20

21         ***Breach of the "Lemon Law" of the State of Connecticut***

22

23         Plaintiff realleges each, and every, paragraphs 1 through 20, and incorporates them by this

24  reference as though fully set forth herein.

25

26         The Vehicle had defects, malfunctions, mis adjustments, and/or nonconformities covered by the

27  warranty that substantially impaired its value, use, or safety to Plaintiff.  Plaintiff's Vehicle, registered in the State of

28  Connecticut (See Exhibit 2), was a "lemon" pursuant to the Statutes in CT GS Sec. 42-179:  Automobile Warranties.

    COMPLAINT FOR DAMAGES - 11

1

2      Pursuant to CT GS Sec. 42-179: *Automobile Warranties*, The Vehicle was new and within the

3   first 24 months and had significantly less than 24,000 miles driven. The Vehicle was inoperable due to its defects.

4   In fact, as noted in Exhibit 3 (inclusive of Exhibits A, B and C,) the Vehicle was inoperable for more than 30 days

5   due to 2 major safety issues—including the recall campaign. The Vehicle had other repairs and inoperable for more

6   days during the 24- month timeframe. The recall campaign noted in Exhibit 3 (inclusive of Exhibits A, B and C,) is

7   dispositive of Defendant's breach of the "Lemon Law," and Plaintiff's attempt to allow Defendant to cure the

8   defects.

9

10      More specifically, pursuant to CT GS Sec. 42-179(e)(2):

11

12      *(e) It shall be presumed that a reasonable number of attempts have been*

13   *undertaken to conform a motor vehicle to the applicable express warranties, if (1) the same*

14   *nonconformity has been subject to repair four or more times by the manufacturer or its agents or*

15   *authorized dealers during the period of two years following the date of original delivery of the*

16   *motor vehicle to a consumer or during the period of the first twenty-four thousand miles of*

17   *operation, whichever period ends first, but such nonconformity continues to exist or (2) the vehicle*

18

19   *is out of service by reason of repair for a cumulative total of thirty or more calendar days*

20   *[emphasis added] during the applicable period, determined pursuant to subdivision (1) of this*

21   *subsection*

22

23

24      Pursuant to CT GS Sec. 42-179(d)(1)-(4), Plaintiff is entitled to relief as noted in the statute:

25

26      *(d) If the manufacturer or its agents or authorized dealers are unable to conform*

27   *the motor vehicle to any applicable express warranty by repairing or correcting any defect or*

28   *condition which substantially impairs the use, safety or value of the motor vehicle to the consumer*

COMPLAINT FOR DAMAGES - 12

*after a reasonable number of attempts, the manufacturer shall replace the motor vehicle with a*

*new motor vehicle acceptable to the consumer, or accept return of the vehicle from the consumer*

*and refund to the consumer, lessor and lienholder, if any, as their interests may appear, the*

*following: (1) The full contract price, including but not limited to, charges for undercoating, dealer*

*preparation and transportation and installed options, (2) all collateral charges, including but not*

*limited to, sales tax, license and registration fees, and similar government charges, (3) all finance*

*charges incurred by the consumer after he first reports the nonconformity to the manufacturer,*

*agent or dealer and during any subsequent period when the vehicle is out of service by reason of*

*repair, and (4) all incidental damages as defined in section 42a-2-715, less a reasonable*

*allowance for the consumer's use of the vehicle.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Summary Judgment against all Defendants, and each of them, as follows:

    A) For restitution, at Plaintiffs election, according to proof;

    B) For incidental damages, according to proof;

    C) For consequential damages, according to proof;

    D) For a civil penalty as provided in Magnuson-Moss, in an amount not to exceed two times the amount of Plaintiff's actual damages;

    E) For actual attorney's fees, as necessary and reasonably, if incurred.

    F) For costs of suit and expenses, according to proof;

    G) For the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted;

    H) For remedies provided in Chapters 6 and 7 of Division 2 of the Commercial Code;

COMPLAINT FOR DAMAGES - 13

1        I)   For remedies provided pursuant to CT GS Sec. 42-179(d);

2        J)   For a jury trial, if Summary Judgement is not granted;

3        K)  For pre-judgment interest at the legal rate;

4        L)  Such other relief the Court deems appropriate

5

6        RESERVATION OF RIGHTS

7

8        The Plaintiff herein reserves the right to amend his Complaint after discovery is completed and as

9 additional facts become known.

10        DECLARATION UNDER PENALTY OF PERJURY The undersigned declares under penalty of

11 perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the

12 information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621. Executed at

13 _____ on _____. Hartford County, Connecticut.

14

15        Dated this 16th day the of February, 2023.

16

17                  Farid F. Shafik, MD, Pro Se Plaintiff

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES - 14

## CLOSED-END MOTOR VEHICLE LEASE AGREEMENT

DEAL# 10636
STK # M06514
CUST# 200068

**EXHIBIT 1**

☒ Monthly Payment Lease      ☐ Single Payment Lease

**1. PARTIES:**                                                                    Lease Date: 10/01/2

| Lessor - Dealer Name | Address |
|---|---|
| ASTON MARTIN SAN DIEGO | 7820 BALBOA AVENUE |
| | SAN DIEGO, CA  92111 |
| Lessee - Name | Address |
| FARID SHAFIK | 357 ANDREWS ST |
| | SOUTHINGTON, HARTFORD, CT 06489 |
| Lessee - Name | Address |
| N/A | N/A |

Each Lessee signing this Lease ("you" or "your") agrees to lease from the Lessor named above the vehicle described in Section 2 (the "Vehicle") on th and conditions in this Lease Agreement ("Lease"). Lessor intends to assign its rights and interest under this Lease to JPMorgan Chase Bank, N. A. ("C As used in this Lease, the terms "us," "our" and "we" refer to the Lessor and, after assignment, to Chase or its successors and assigns.

**2. DESCRIPTION OF LEASED VEHICLE:**

| MODEL YEAR | MAKE | MODEL | BODY STYLE | COLOR | VEHICLE ID NO. | ODOME |
|---|---|---|---|---|---|---|
| 2019 | ASTON MARTI | DB11 CPE | CV | VOLCANO RED | SCFRMFCW7KGM06514 | 1 |

☐ If checked, the primary use of the Vehicle is business or commercial; otherwise, it is personal, family or household use.

**3. LEASE TERM.** The Lease Term is _____36_____ months, beginning on the Lease Date (above) and ending on 09/30/2022 (the "Maturity

**4. DESCRIPTION OF TRADE-IN (if applicable)**

| MODEL YEAR | MAKE | MODEL | GROSS ALLOWANCE | AMOUNT OWED | NET TRADE-IN |
|---|---|---|---|---|---|
| N/A | N/A | N/A | $  N/A | $  N/A | $  N/A |

The box below memorializes trade-in, turn-in and other individualized agreements between you and the Lessor ("Dealer"). If none indicate by entering "none" or N/A. Obligation Lessor set forth in this box shall be the sole responsibility of the Dealer and not Chase. If this box conflicts with any other section of this Lease, the other section of this Lease shall

This lease is subject to assignee approval within 10 days of execution.  Otherwise this lease will be rescinded and the Lessee shall return the vehicle on demand.

An "e" in this Lease indicates an estimate.

**Federal Consumer Leasing Act Disclosures**

| 5. Amount Due at Lease Signing or Delivery: | 6. Lease Payments: | 7. Other Charges: (not part of your Monthly Payment) | 8. Total of Paymer (The amount you have paid by the of the Lease): |
|---|---|---|---|
| (Itemized below)*  $ 5000.00 | (a) **Monthly Payment Lease:** Your first Monthly Payment of $ 2600.00 is due on 10/01/2019 followed by 35 payments of $ 2600.00 due each following month. The total of your Monthly Payments is $ 93600.00. | **Disposition Fee** (if you do not purchase the Vehicle from us):  $ 695.00 | $ 96695.00 |
| | (b) **Single Payment Lease:** Your Advance Single Payment of N/A is due on N/A | **Total:**  $ 695.00 | |

**Itemization of Amount Due at Lease Signing or Delivery**

| 9. Amount Due at Lease Signing or Delivery: | | 10. How the Amount Due at Lease Signing or Delivery will be paid: | |
|---|---|---|---|
| (a) Capitalized Cost Reduction............... | $ 1634.34 | (a) Net trade-in allowance.................. | $ 0.00 |
| (b) First Monthly Payment................ | + $ 2600.00 | (b) Amount to be paid in cash............. | + $ 5000.00 |
| (c) Advance Single Payment............... | + $ N/A | (c) Rebates and noncash credits: | |
| (d) Refundable security deposit.............. | + $ N/A | (1) Manufacturer Rebate(s)............ | + $ N/A |
| (e) Initial title fees....................... | + $ 510.00 | (2) N/A | + $ 0.00 |
| (f) Initial registration fees................. | + $ N/A | (3) N/A | + $ 0.00 |
| (g) Sales or use tax...................... | + $ N/A | (4) N/A | + $ 0.00 |
| (h) Acquisition Fee....................... | + $ N/A | | |
| (i) Dealer Document Processing Charge (not a government fee)..... | + $ N/A | | |
| (j) Prior credit or lease balance............. | + $ N/A | | |
| (k) Electronic Filing Charge (not a government fee).. | + $ 29.00 | | |
| (l) N/A | + $ N/A | | |
| (m) N/A | + $ N/A | | |
| (n) N/A | + $ N/A | | |
| (o) N/A | + $ N/A | | |
| (p) CAP RED TAX | + $ 126.66 | | |
| (q) N/A | + $ N/A | | |
| (r) N/A | + $ N/A | | |
| (s) N/A | + $ N/A | | |
| (t) N/A | + $ N/A | | |
| (u) N/A | + $ N/A | | |
| (v) Total................................ | = $ 5000.00 | (d) Total.............................. | = $ 5000.00 |

**11. Your Lease payment is determined as shown below:**

| | | |
|---|---|---|
| (a) **Gross capitalized cost.** The agreed upon value of the Vehicle ($46180.09 ) and any items you pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) (See Section 16 below for an itemization of this amount).................... | $ | 247460.09 |
| (b) **Capitalized cost reduction.** The amount of any rebate, net trade-in allowance, noncash credit or cash you pay that reduces the gross capitalized cost.................... | – $ | 1634.34 |
| (c) **Adjusted capitalized cost.** The amount used in calculating your base Monthly Payment.................... | = $ | 245825.75 |
| (d) **Residual value.** The value of the Vehicle at the end of the Lease used in calculating your base Monthly Payment....... | – $ | 162634.24 |
| (e) **Depreciation and any amortized amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term.................... | = $ | 83191.51 |
| (f) **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts.................... | + $ | 3676.13 |
| (g) **Total of base Monthly Payments.** The depreciation and any amortized amounts plus the rent charge.................... | = $ | 86867.64 |
| (h) **Lease Payments.** The number of payments in your Lease.................... | ÷ | 36 |
| (i) **Base Lease Payment** (Monthly or Advance Single, as applicable).................... | = $ | 2412.00 |
| (j) **Sales/use tax.**................... | | |

| | | |
|---|---|---|
| (m) N/A | + $ | N/A |
| (n) N/A | + $ | N/A |
| (o) N/A | + $ | N/A |
| (p) CAP RED TAX | + $ | 126.66 |
| (q) N/A | + $ | N/A |
| (r) N/A | + $ | N/A |
| (s) N/A | + $ | N/A |
| (t) N/A | + $ | N/A |
| (u) N/A | + $ | N/A |
| (v) Total . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 5000.00 | (d) Total . . . . . . . . . . . . . . . . . . . . . . = $  5000.00 |

**11. Your Lease payment is determined as shown below:**

(a) Gross capitalized cost. The agreed upon value of the Vehicle ($846180.09 ) and any items you pay for over the Lease Term
(such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) (See Section 16 below for
an itemization of this amount) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $  247460.09

(b) Capitalized cost reduction. The amount of any rebate, net trade-in allowance, noncash credit or cash you pay that reduces
the gross capitalized cost. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . − $  1634.34

(c) Adjusted capitalized cost. The amount used in calculating your base Monthly Payment. . . . . . . . . . . . . . . . . . . . . . = $  245825.75

(d) Residual value. The value of the Vehicle at the end of the Lease used in calculating your base Monthly Payment. . . − $  162634.24

(e) Depreciation and any amortized amounts. The amount charged for the Vehicle's decline in value through normal and
for other items paid over the Lease Term. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $  83191.51

(f) Rent charge. The amount charged in addition to the depreciation and any amortized amounts. . . . . . . . . . . . . . . . + $  3676.13

(g) Total of base Monthly Payments. The depreciation and any amortized amounts plus the rent charge. . . . . . . . . . . . = $  86867.64

(h) Lease Payments. The number of payments in your Lease. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ÷  36

(i) Base Lease Payment (Monthly or Advance Single, as applicable). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $  2412.99

(j) Sales/use tax. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $  187.01

(k) Other:  N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $  N/A

(l) Total Lease Payment (Monthly or Advance Single, as applicable). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $  2600.00
Lease terms are negotiable with the Lessor. The Lessor intends to assign this Lease Agree     d may retain a portion of the Total Lease Payments.

**12. Early Termination.** You may have to pay a substantial charge if you end this Le     ly. **The charge may be up to several thousand doll**
The actual charge will depend on when the Lease is terminated. The earlier you en     ease, the greater this charge is likely to be.

**13. Excessive Wear and Use.** You may be charged for excessive wear based on our standa     normal use, and for mileage in excess of  5,000
miles per year during the scheduled Lease Term at the rate of  .150  cents per mile.

**14. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for $  162634.24  and a purchase
option fee of $  150.00 , for a total of $  162784.24 . The purchase option fee does not include fees for tags, taxes or registration.

**15. Other Important Terms.** See the front and back of this Lease for additional information on early termination, purchase options and maintenance responsibili
warranties, late and default charges, insurance, excess wear standards and any security interest, if applicable.

| **16. ITEMIZATION OF GROSS CAPITALIZED COST.** | | **17. OFFICIAL FEES AND TAXES.** The total amount you will pay for offi |
|---|---|---|

**16. ITEMIZATION OF GROSS CAPITALIZED COST.**

(a) Agreed upon value of the Vehicle as equipped at
time of signing the Lease . . . . . . . . . . . . . . . .  $ 246180.09

(b) Agreed upon value of each accessory and item
of optional equipment the Lessor agrees to add
to the Vehicle after signing the Lease:

| | | |
|---|---|---|
| N/A | + $ | N/A |
| N/A | + $ | N/A |
| (c) Sales/use tax . . . . . . . . . . . . . . . . . . . . . . . | + $ | N/A |
| (d) Initial title, license and registration fees . . . . . . | + $ | N/A N/A |
| (e) Credit Life Insurance Premium . . . . . . . . . . . | + $ | N/A N/A |
| (f) Credit Disability Insurance Premium . . . . . . . . | + $ | N/A N/A |
| (g) Service Contract . . . . . . . . . . . . . . . . . . . | + $ | N/A |
| (h) Guaranteed Automobile Protection . . . . . . . . | + $ | N/A |
| (i) Acquisition Fee . . . . . . . . . . . . . . . . . . . . . | + $ | 1195.00 |
| (j) Prior credit or lease balance . . . . . . . . . . . . . | + $ | N/A |
| (k) Dealer Document Processing Charge (not a government fee) . . . . . . . . . . . . . . . . | + $ | 85.00 |
| (l) Electronic Filing Charge (not a government fee) . | + $ | N/A |
| N/A | + $ | N/A |
| N/A | + $ | N/A |
| N/A | + $ | N/A |
| N/A | + $ | N/A |
| N/A | + $ | N/A |
| N/A | + $ | N/A |
| N/A | + $ | N/A |
| N/A | + $ | N/A |
| N/A | + $ | N/A |
| (w) Gross Capitalized Cost . . . . . . . . . . . . . . . . | = $ | 247460.09 |

**17. OFFICIAL FEES AND TAXES.** The total amount you will pay for offi
and license fees, registration, title, and taxes over the term of
Lease, whether included with your Monthly Payments (or Advar
Single Payment, as applicable) or assessed otherwise is:

$  8776.02

This amount is an estimate. The actual total of fees and taxes
be higher or lower depending on the tax rates in effect or the v
of the Vehicle or a fee or tax is assessed.

**18. WARRANTIES.** The Vehicle is subject to the manufacturer's stan
new car warranty. The Vehicle is also subject to any other exp
warranties or guarantees disclosed here:

There are no warranties, guarantees or other rights provided to yo
us or the Vehicle's manufacturer other than those disclosed in
Lease.
WE DISCLAIM ALL IMPLIED WARRANTIES, INCLUDING
WARRANTIES OF MERCHANTABILITY OR FITNESS FO
PARTICULAR PURPOSE, EXCEPT WHERE IMPLIED BY LA

**19. INSURANCE VERIFICATION.** The insurance required by Section
this Lease is in force on the Lease Date as follows:

Insurance Co.: _____
Policy No.: _____
Agent's Name: _____
Agent's Address: _____
Phone Number: _____

**20. OPTIONAL INSURANCE AND OTHER PRODUCTS.**
You are not required to buy any of the optional insurance products or other products listed below. You should carefully review the contracts that describ
details of any optional insurance products or other products you choose to buy. By signing this Lease, you have elected to purchase from the Lessor the foll
optional insurance products and other products:

| Type | Provider Name | Coverage Term/Coverage Amount | Premium/Char |
|---|---|---|---|
| ☐ Service Contract | N/A | N/A miles/N/A months . . . . . . . . . . . . . . . . . . $ | N/A |
| ☐ Prepaid Maintenance Plan | N/A | N/A miles/N/A months . . . . . . . . . . . . . . . . . . $ | N/A |
| ☐ Tire & Wheel Pr | N/A | N/A miles/N/A months . . . . . . . . . . . . . . . . . . $ | N/A |
| N/A | N/A | N/A . . . . . . . . . . . . . . . . . . $ | N/A |
| N/A | N/A | N/A . . . . . . . . . . . . . . . . . . $ | N/A |
| N/A | N/A | N/A . . . . . . . . . . . . . . . . . . $ | N/A |

have purchased the optional products listed above for a total charge of: _____
portion of the premiums or other charges for the optional insurance products and other products listed above.

* The Dealer may

**21. HOW THIS LEAS**     BE CHANGED. This Lease contains the entire agreement for the Lease of the Vehicle, and may, in our sole discretion, agree on
requests for extensi     ferrals, or due date changes, and confirm them electronically or in writing. We may, at our option, change any provision in this L

3. **Excessive Wear and Use.** You may be charged for excessive wear based on our standa_____ normal use, and for mileage in excess of _____ 5,000 miles per year during the scheduled Lease Term at the rate of 0 .150 cents per mile.

4. **Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for $_162634.24_ and a purchase option fee of $____150.00___ , for a total of $_162784.24_ . The purchase option fee does not include fees for tags, taxes or registration.

5. **Other Important Terms.** See the front and back of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, excess wear standards and any security interest, if applicable.

3. **ITEMIZATION OF GROSS CAPITALIZED COST.**

(a) Agreed upon value of the Vehicle as equipped at the time of signing the Lease . . . . . . . . . . . . . . . . . $ 246180.09

(b) Agreed upon value of each accessory and item of optional equipment the Lessor agrees to add to the Vehicle after signing the Lease:

N/A _____ + $_____ N/A

N/A _____ + $_____ N/A

(c) Sales/use tax . . . . . . . . . . . . . . . . . . . . . . . . . . + $_____ N/A

(d) Initial title, license and registration fees . . . . . . + $_____ N/A

(e) Credit Life Insurance Premium . . . . . . . . . . . + $ N/A N/A

(f) Credit Disability Insurance Premium . . . . . . . . + $ N/A N/A

(g) Service Contract . . . . . . . . . . . . . . . . . . . . . . + $_____ N/A

(h) Guaranteed Automobile Protection . . . . . . . . . + $ N/A

(i) Acquisition Fee . . . . . . . . . . . . . . . . . . . . . . . + $ 1195.00

(j) Prior credit or lease balance . . . . . . . . . . . . . . + $_____ N/A

(k) Dealer Document Processing Charge (not a government fee) . . . . . . . . . . . . . . . + $ 85.00

(l) Electronic Filing Charge (not a government fee) . . . + $_____ N/A

(m) N/A _____ + $_____ N/A

(n) N/A _____ + $_____ N/A

(o) N/A _____ + $_____ N/A

(p) N/A _____ + $_____ N/A

(q) N/A _____ + $_____ N/A

(r) N/A _____ + $_____ N/A

(s) N/A _____ + $_____ N/A

(t) N/A _____ + $_____ N/A

(u) N/A _____ + $_____ N/A

(v) N/A _____ + $_____ N/A

(w) Gross Capitalized Cost . . . . . . . . . . . . . . . . . . = $247460.09

17. **OFFICIAL FEES AND TAXES.** The total amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included with your Monthly Payments (or Advance Single Payment, as applicable) or assessed otherwise is:

$____8776.02_____e.

This amount is an estimate. The actual total of fees and taxes may be higher or lower depending on the tax rate in effect or the value of the Vehicle when a fee or tax is assessed.

18. **WARRANTIES.** The Vehicle is subject to the manufacturer's standard new car warranty. The Vehicle is also subject to any other express warranties or guarantees disclosed here:

There are no warranties, guarantees or other rights provided to you by us or the Vehicle's manufacturer other than those disclosed in this Lease.

WE DISCLAIM ALL IMPLIED WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT WHERE PROHIBITED BY LAW.

19. **INSURANCE VERIFICATION.** The insurance required by Section 28 of this Lease is in force on the Lease Date as follows:

Insurance Co.: _____

Policy No.: _____

Agent's Name: _____

Agent's Address: _____

Phone Number: _____

**OPTIONAL INSURANCE AND OTHER PRODUCTS.**

You are not required to buy any of the optional insurance products or other products listed below. You should carefully review the contracts that describe the details of any optional insurance products or other products you choose to buy. By signing this Lease, you have elected to purchase from the Lessor the following optional insurance products and other products:

| Type | Provider Name | Coverage Term/Coverage Amount | | | Premium/Charge |
|---|---|---|---|---|---|
| ☐ Service Contract | N/A | N/A | miles/N/A | months | $ N/A |
| ☐ Prepaid Maintenance Plan | N/A | N/A | miles/N/A | months | $ N/A |
| ☐ Tire & Wheel Pr____ | N/A | N/A | miles/N/A | months | $ N/A |
| A_____ | N/A | N/A | | | $ N/A |
| A_____ | N/A | N/A | | | $ N/A |
| A_____ | N/A | N/A | | | $ N/A |

have purchased the optional products listed above for a total charge of: . . . . . . . . . . . . . . . . . . . . $ N/A

* The Dealer may . . . . portion of the premiums or other charges for the optional insurance products and other products listed above.

**HOW THIS LEASE** ___ **BE CHANGED.** This Lease contains the entire agreement for the Lease of the Vehicle. We may, in our sole discretion, agree orally to requests for exten ___ ferrals, or due date changes, and confirm them electronically or in writing. We may, at our option, change any provision in this Lease by giving you at lea ___ ays' advance written notice of the change, provided that the change is at least as favorable to you as the existing provision. No other changes ___ eave are effective unless they are in a writing signed by you and us.

Lessee's Signature: _____  _____ Lessee's Signature N/A

LESSEE(S) NOTICES AND SIGNATURES

SIGNING THIS LEASE, YOU ACKNOWLEDGE THAT THIS LEASE CONTAINS AN "**ARBITRATION PROVISION**" ON THE REVERSE SIDE, THAT YOU /E READ THE AGREEMENT TO ARBITRATE DISPUTES AND AGREE TO ITS TERMS.

d Loss Early Termination Payoff Balance Notice: If there is a total loss, destruction or theft of the Vehicle, the early termination payoff balance (Adjusted Lease ince) of the Vehicle as determined under Section 30 of this Lease may be different than the actual cash value of the Vehicle as determined by your insurer or Vehicle. Section 31 provides that you will not be obligated to pay us this amount, unless, as of the date of such total loss, you do not have in effect a physical iage insurance policy as required by Section 28. By signing this Lease, you acknowledge that you have read this notice and understand its content.

**THERE IS NO COOLING OFF PERIOD**

fornia law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this Lease simply ause you change your mind, decided the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this Lease only with ___ ement of the Lessor or for legal cause, such as fraud.

ve the right to return the vehicle, cancel and receive a refund of any payments made if the credit application is not approved, unless nonapproval from an incomplete application or from incorrect information provided by you.

___ e to the Lessee: (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (2) ___ re entitled to a completely filled in copy of this Lease; (3) Warning - Unless a charge is included in this Lease for ___ liability or property damage insurance, payment for that coverage is not provided by this Lease.

___ E TO LESSEE(S): BY SIGNING THIS LEASE BELOW YOU ACKNOWLEDGE THAT: (1) EACH LESSEE ACCEPTS AND IS SEPARATELY LIABLE ___ THE TERMS AND CONDITIONS OF THIS LEASE; AND (2) YOU HAVE READ BOTH SIDES OF THIS LEASE, UNDERSTAND ALL OF ITS TERMS ONDITIONS AND RECEIVED A COMPLETELY FILLED IN COPY BEFORE SIGNING BELOW.

___ (s) agree to all terms and conditions in this Lease.

_____ Title (if a business) 10/1/2019    x_ N/A _____ _____

ssee Signs    Title (if a business)    Lessee Signs    Title (if a business)

LESSOR'S SIGNATURE AND ASSIGNMENT

igning below, Lessor: (1) accepts all terms and conditions of this Lease; and then (2) assigns all of its rights under this Lease, as well as all title and interest ___ d to the Vehicle, to JPMorgan Chase Bank, N.A. ("Chase"), subject to the applicable dealer agreement between the Lessor and Chase; and (3) warrants to ___ e that it has verified that the insurance set forth in Section 19 is in place and complies with the requirements of this Lease.

Title MANAGER    Date 10/01/2019

ssor-Dealer Signs

NO. CAFL-CALIFORNIA (REV. 6/19)    ORIGINAL    © 2018 JPMorgan Chase Bank, N.A. Member FDIC

## VEHICLE MAINTENANCE, USE AND INSURANCE

**22. PAYMENTS.** You will pay all Monthly Payments and other amounts owed under this Lease when due and as we direct. Your first Monthly Payment is due on the Lease Date. All subsequent Monthly Payments are due on the same day of each following month, except that if the Lease Date falls on the 29th, 30th or 31st day of the month, all subsequent Monthly Payments are due on the first day of each month beginning in the second month following the Lease Date. If your payment schedule above reflects that subsequent Monthly Payments are due on the 29th, 30th or 31st day of the month, then this Section controls rather than the payment schedule. If we collect sales/use tax on your Monthly Payments and you move, the amount of your Monthly Payment will change if the tax changes.

**23. LATE PAYMENTS AND RETURNED ITEMS.** You will pay us a late fee of the lesser of **$25 or 5%** of the unpaid amount of any Monthly Payment not received by us within **10 days** after its due date. This fee will be due upon demand. If any check, draft, electronic payment or other payment we receive is returned unpaid or declined for any reason, then you will not be required to pay us a returned item fee.

**24. MAINTENANCE AND OPERATING COSTS.** You will maintain, service and repair the Vehicle as recommended in the owner's manual and as needed to keep the Vehicle in good operating condition and free of physical damage. You will have any defects timely repaired according to any manufacturer's safety recall notices. You will pay all operating expenses for the Vehicle, including the cost of oil, gas, lubrication, parts, labor, storage, parking, towing, tolls and all other costs associated with operating the Vehicle. You will maintain records of all repairs and maintenance. You will not modify the Vehicle (such as adding, removing or modifying any accessories, equipment, parts, painting or lettering) without our prior written permission. Any accessories, equipment or parts installed in or on the Vehicle become our property and part of the Vehicle, even if we gave you our written permission. You will make the Vehicle available to us for inspection upon our reasonable request. Any inspection we perform will be solely to protect our interests in the Vehicle or to determine your liability under this Lease and is not a representation or warranty to you about the Vehicle's condition or safety.

**25. TITLE, REGISTRATION AND OFFICIAL FEES AND TAXES.** You will keep the Vehicle's registration and licensing current with the appropriate governmental office. Legal title to the Vehicle will be in our name and the Vehicle will be titled as we direct. You will pay when due all government taxes and fees (other than our income taxes) in connection with this Lease, including its termination, and your use and possession of the Vehicle, whether assessed on you, us or the Vehicle. Your responsibility includes, but is not limited to, any personal property taxes and fees for title, registration and licensing. You are responsible for government taxes and fees that are assessed or imposed for any period that begins before you purchase or return the Vehicle to us, even if those fees or taxes are billed or due afterwards. At termination of this Lease, you will pay, at our option, an amount we estimate for such government taxes and fees that are not yet billed. If the actual taxes or fees are less than our estimate, we will refund you the difference; if they are more, you will pay us the difference. We are not required to apply on your behalf for any exemptions or refunds of government taxes or fees. If we receive a bill for government fees and taxes, we may forward it to you for payment or we may pay it and you will reimburse us upon our demand.

**26. USE OF THE VEHICLE.** You will not use the Vehicle or allow anyone else to use it (a) unlawfully or for any illegal or wrongful purpose; (b) to transport goods or persons for hire; (c) without a valid driver license and insurance; or (d) in any manner that would not be covered by your required insurance policy or that would void any warranty. You will not take or allow others to take the Vehicle outside the United States without our prior written permission.

**27. FINES AND PENALTIES.** You will pay when due any fine, penalty, traffic ticket, parking ticket, or court costs issued in connection with the Vehicle's use (all referred to as a **"Fine(s)"**). We are not responsible for any Fines. If we receive a citation, court process or other demand for payment of a Fine during the term of this Lease, you authorize us to inform the entity issuing the Fine, its agent, toll road or toll highway company that you are responsible for paying the Fine and to give them your name, driver license number, contact information, and a copy of this Lease and any related information. At our option, we may pay any Fine that you have not paid on your behalf. You must reimburse us for any such amount immediately upon demand.

**28. INSURANCE.** You must keep the Vehicle insured with the following minimum insurance coverages in addition to any other insurance required by law: (a) $100,000 for bodily injury to one person, $300,000 for bodily injury for any one accident, and $50,000 for property damage; and (b) collision, fire, theft and comprehensive coverage covering the Vehicle's actual value with a deductible of no more than $1,000. Such policies must not exclude or restrict coverage if you were to drive the Vehicle, or when the driver is someone you allow to drive the Vehicle or who you can reasonably foresee may drive the Vehicle. Chase and/or other persons specified by Chase must be listed as loss payee and additional insured. You will not operate the Vehicle if the insurance coverage has lapsed or has been cancelled. The insurance policy must state that we will be given at least 10 days' advance notice of any cancellation, reduction, or other material change in coverage. You may provide the insurance through any insurer reasonably acceptable to us. You will give us written proof of coverage upon our request. You will remain liable to us for any loss we suffer because your insurer denies a claim. You authorize us to settle any claim for loss or damage to the Vehicle, and to collect insurance proceeds, directly with or from your insurer, as well as to endorse your name on and negotiate any insurance check or draft. You will cooperate with us in collecting insurance proceeds, including providing or signing any releases or other documents. You will not settle any insurance claim or accept any settlement payment from your insurer without first obtaining our written permission. If you fail to maintain the required insurance we may, but are not required to, obtain it to protect our interests and you will reimburse us for the insurance premium we pay.

**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

## DEFAULT AND LEASE TERMINATION

**29. DEFAULT**

(a) **Events of Default.** You will be in default if: (1) you fail to pay any Monthly Payment or other amount you owe under this Lease when due; (2) you gave any false or misleading information when applying for this Lease; (3) you become insolvent or the subject of a bankruptcy proceeding; (4) you are dissolved (if an entity), die or become incompetent and there is no surviving Lessee; or (5) you break any other promise in this Lease.

(b) **Our Remedies.** If you default, in addition to any other rights we have, we can do one or more of the following at our option and without notifying you, except for any notice required by law: (1) take any reasonable measures to correct the default or to save us from loss, in which case you will reimburse us upon demand for our expenses; (2) terminate this Lease and your rights to possess and use the Vehicle; (3) take possession of the Vehicle by any lawful method or manner; (4) cancel any optional product or service you purchased as part of this Lease and apply any refunds for unearned premiums or charges to amounts you owe under this Lease; (5) or pursue any other remedy at law or in equity.

(c) **Default Charges:** In addition to all other amounts you owe under this Lease, including, but not limited to, any liability under Sections 27, 30, 31 or 33, as applicable, you will pay us all of the following, as permitted by law: collection costs; court costs; the reasonable expenses we incur in connection with locating, retaking (or attempting to retake), storing and transporting the Vehicle and the actual costs for selling the Vehicle and preparing it for sale, as permitted by law, and, if the Lease is referred to attorneys who are not our salaried employees, reasonable attorneys' fees we incur to enforce this Lease.

**30. EARLY TERMINATION**

(a) **Early Termination Liability.** If you are not in default, you may end this Lease at any time before the end of the Lease Term by returning the Vehicle to a place we specify. We may end this Lease at any time before the end of the Lease Term if you default. If you or we end this Lease before the beginning of the first Monthly Period (defined below) and the Vehicle is not a Total Loss, then we will assess an Early Termination Charge equal to the Adjusted Lease Balance minus the Vehicle's Fair Market Value. For a Monthly Payment Lease, if you have returned the Vehicle as required or we have recovered the Vehicle, then the Early Termination Charge will not exceed the sum of all remaining Monthly Payments that would otherwise have been due from the early termination date to the Maturity Date and any End-of-Term Liability under Section 33. Your total early termination liability will equal this Early Termination Charge plus any other amounts that have become due and are unpaid at termination (including, for a Monthly Payment Lease, any unpaid Monthly Payments due before termination), less any credits to your account. We will credit your account for any remaining Refundable Security Deposit (see Sections 9(d) and 38) and any refunds we may receive from the cancellation of any Optional Insurance or Other Products (see Section 20). For a Single Payment Lease, we will credit your account for any portion of the Single Payment that is not allocated to the rent charge earned or Depreciation when calculating the Adjusted Lease Balance. Additionally, for a Single Payment Lease, your early termination liability under this Section will not exceed the amount of any End-of-Term Liability under Section 33 after applying any credits for any remaining Refundable Security Deposit and any refunds we receive from the cancellation of any Optional Insurance or Other Products. If any of these credits result in a negative early termination liability, then the excess credits will be refunded to you. If the Vehicle is a Total Loss, your early termination liability will be determined under Sections 28 and 31 rather than under this Section. Further, if you are in default and the Vehicle has not been returned as required or recovered by us, then we will use the amount that you would have owed if you had exercised your purchase option under Section 32, including the purchase option fee, as the Adjusted Lease Balance when calculating the Early Termination Charge. (If you pay all that you owe, including this amount, then we will sell the Vehicle to you under Section 32.)

(b) **Calculation of the Adjusted Lease Balance.**

(1) **Calculation of the Monthly Rent Charge:** We earn a portion of the total rent charge (see Section 11(f)) during each month of the Lease Term. To calculate the rent charge earned each month, we divide the Lease Term into monthly periods (each "Monthly Period"). For a Monthly Payment Lease, the first Monthly Period begins on due date of the first Monthly Payment (see Section 6(a)) and subsequent Monthly Periods begin on the due date of each subsequent Monthly Payment. For a Single Payment Lease the first Monthly Period begins on due date of the Single Payment (see Section 6(b)) and subsequent Monthly Periods begin on the same day of each subsequent month. We figure the monthly rent charge earned using the "Constant Yield Method." When figuring the monthly rent charge, credits and charges are earned in advance on the first day of each Monthly Period. The rent charge for a Monthly Period equals (i) the constant rate implicit in the Lease multiplied by (ii) the Balance Subject to Rent Charge. In the case of a Monthly Payment Lease, the Balance Subject to Rent Charge in a Monthly Period equals the difference between the Adjusted Capitalized Cost and the sum of (i) all Depreciation for each prior Monthly Period plus (ii) the first Monthly Payment. In the case of a Single Payment Lease, the Balance Subject to Rent Charge is determined by subtracting from Residual Value (see Section 11(d)) the total rent charge scheduled to be earned over the Lease Term (see Section 11(f)) and adding to the difference all rent charges accrued during the preceding Monthly Periods.

(2) **Depreciation:** At the beginning of each Monthly Period, we allocate a portion of the Monthly Funds to the rent charge earned based on the calculation above, and the rest to monthly depreciation and other amortized amounts ("Depreciation"). For a Monthly Payment Lease, the "Monthly Funds" for a Monthly Period is equal to the base Monthly Payment due. For a Single Payment Lease, the "Monthly Funds" for a Monthly Period is equal to the base Single Payment divided by the number of monthly periods during the Lease Term. (Your base Monthly or Single Payment is the payment before taxes and other non-amortized amounts (see Section 11(i)).

(3) **Adjusted Lease Balance:** The Adjusted Lease Balance equals the Adjusted Capitalized Cost minus the sum of all accrued monthly Depreciation for each Monthly Period before termination of this Lease and the Monthly Period in which this Lease terminates.

(c) **Fair Market Value.** The Vehicle's Fair Market Value is equal to the net sale price we receive for the Vehicle at a wholesale sale, after deducting from the gross sale price the reasonable expenses we incur to transport, recondition, prepare for sale and sell the Vehicle. Alternatively, if you obtain an appraisal of the Vehicle's wholesale value, at your expense, within 30 days prior to or 10 days after the termination date from a professional independent appraiser agreed to by us, then we will use the appraised value as the Vehicle's Fair Market Value. You and we also may agree in writing to a specific amount for the Vehicle's Fair Market Value. If the Vehicle's Fair Market Value is negative, then we treat the Vehicle's Fair Market Value as zero. Additionally, the Vehicle's Fair Market Value is zero if the Vehicle is not returned to us.

**31. DAMAGE, LOSS OR DANGER TO THE VEHICLE.** You will keep the Vehicle free from any liens, encumbrances or claims, whether voluntary or involuntary. You will not allow the Vehicle (and will not allow others to take actions causing the Vehicle) to become damaged, destroyed, stolen, lost, confiscated, abandoned, or subjected to undue peril. You will notify us and your insurance company within 24 hours if any of these events occurs.

Monthly Payment (see Section 6(a)) and subsequent Monthly Periods begin on the due date of each subsequent Monthly Payment. For a Single Payment Lease the first Monthly Period begins on due date of the Single Payment (see Section 6(b)) and subsequent Monthly Periods begin on the same day of each subsequent month. We figure the monthly rent charge earned using the "Constant Yield Method." When figuring the monthly rent charge, monthly rent charges are earned in advance on the first day of each Monthly Period. The rent charge for a Monthly Period equals (i) the constant rate implicit in the Lease multiplied by (ii) the Balance Subject to Rent Charge. In the case of a Monthly Payment Lease, the Balance Subject to Rent Charge in a Monthly Period equals the difference between the Adjusted Capitalized Cost and the sum of (i) all Depreciation for each prior Monthly Period plus (ii) the first Monthly Payment. In the case of a Single Payment Lease, the Balance Subject to Rent Charge is determined by subtracting from Residual Value (see Section 11(d)) the total rent charge scheduled to be earned over the Lease Term (see Section 11(f)) and adding to the difference all rent charges accrued during the preceding Monthly Periods.

(2) **Depreciation:** At the beginning of each Monthly Period, we allocate a portion of the Monthly Funds to the rent charge earned based on the calculation above, and the rest to monthly depreciation and other amortized amounts ("Depreciation"). For a Monthly Payment Lease, the "Monthly Funds" for a Monthly Period is equal to the base Monthly Payment due. For a Single Payment Lease, the "Monthly Funds" for a Monthly Period is equal to the base Single Payment divided by the number of monthly periods during the Lease Term. (Your base Monthly or Single Payment is the payment before taxes and other non-amortized amounts (see Section 11(i)).

(3) **Adjusted Lease Balance:** The Adjusted Lease Balance equals the Adjusted Capitalized Cost minus the sum of all accrued monthly Depreciation for each Monthly Period before termination of this Lease and the Monthly Period in which this Lease terminates.

(c) **Fair Market Value.** The Vehicle's Fair Market Value is equal to the net sale price we receive for the Vehicle at a wholesale sale, after deducting from the gross sale price the reasonable expenses we incur to transport, recondition, prepare for sale and sell the Vehicle. Alternatively, if you obtain an appraisal of the Vehicle's wholesale value, at your expense, within 30 days prior to or 10 days after the termination date from a professional independent appraiser agreed to by us, then we will use the appraised value as the Vehicle's Fair Market Value. You and we also may agree in writing to a specific amount for the Vehicle's Fair Market Value. If the Vehicle's Fair Market Value is negative, then we treat the Vehicle's Fair Market Value as zero. Additionally, the Vehicle's Fair Market Value is zero if the Vehicle is not returned to us.

**31. DAMAGE, LOSS OR DANGER TO THE VEHICLE.** You will keep the Vehicle free from any liens, encumbrances or claims, whether voluntary or involuntary. You will not allow the Vehicle (and will not allow others to take actions causing the Vehicle) to become damaged, destroyed, stolen, lost, confiscated, abandoned, or subjected to undue peril. You will notify us and your insurance company within 24 hours if any of these events occurs.

(a) **Liability for Total Loss.** You are responsible for the risk of loss to the Vehicle. If the Vehicle is lost, stolen or damaged beyond repair (a "**Total Loss**"), we will terminate this Lease and, except for amounts waived under Subsection (b) below, you will pay us promptly upon our demand the Adjusted Lease Balance (see Section 30(b)) less credits for (i) any remaining Refundable Security Deposit (Sections 9(d) and 38), (ii) any refunds we receive from the cancellation of any Optional Insurance or Other Products (Section 20), and (iii) any other amounts we receive in payment for the loss, plus any other amounts due under this Lease at termination. For a Single Payment Lease, we also will provide a credit for any portion of the Single Payment that is allocated to the earned monthly rent charge or monthly Depreciation when calculating the Adjusted Lease Balance.

(b) **Conditional Gap Waiver.** If the Vehicle is a Total Loss and you had in place the insurance required by this Lease on the date of loss, we will waive any portion of the Adjusted Lease Balance remaining after we subtract the payment we receive from your insurer for the loss (the "**Gap Amount**"). However, you will still owe us any other amounts due under this Lease plus any amounts your insurer deducts from the Vehicle's actual cash value (for example, for any pre-existing damage) and an amount equal to your insurance deductible when paying the claim. You will be in default and our waiver of the Gap Amount in this Subsection (b) will not apply if you did not have the required insurance in place, you do not otherwise comply with Section 28, or your insurer denies any part of the claim.

**32. PURCHASE OPTION.** You may purchase the Vehicle from us if you are not in default, on an AS-IS, WHERE-IS basis, at any time before or at the end of the Lease Term. To purchase the Vehicle, you must pay the sum of (a) the amount in Section 14 if you purchase the Vehicle at the end of the Lease Term, or the Adjusted Lease Balance plus the purchase option fee in Section 14 if you purchase it before the end of the Lease Term, plus (b) any related official fees, such as sales tax, other taxes, title, tags, license and registration we are required to collect, plus (c) any past due Monthly Payments and any other amounts you owe under this Lease. If you purchase the Vehicle, you will transfer title, re-register the Vehicle and remove and return the license plates (if required by law) within 30 days after purchase or any shorter time required by law. You will sign any additional documents necessary to effect the purchase. We may, at our option, apply any credits or security deposit under this Lease towards the purchase price.

**33. END-OF-TERM LIABILITY.** Your right to use the Vehicle ends on the Maturity Date. If this Lease ends after the last Monthly Payment is due, then we will treat this Lease as if it terminated at the end of the Lease Term and not as if it ended early. However, if the Vehicle is a Total Loss, Section 31 applies. If you do not purchase the Vehicle, at the end of the Lease Term you must return the Vehicle to a place we specify, call us within one business day of returning the Vehicle, and pay us the following end-of-term liability upon our demand: (a) the **Disposition Fee** disclosed in Section 7; plus (b) any excess mileage charges under Section 13; plus (c) any excess wear and use under Section 34; plus (d) all other amounts due and unpaid under this Lease. You will not keep the Vehicle past the end of the Lease Term unless we agree in writing to extend the Lease Term. For each full or partial Monthly Period after the end of the Lease Term that you have not returned or purchased the Vehicle, you will pay us an additional amount equal to one Monthly Payment (if this is a Single Payment Lease, this monthly amount equals the Advance Single Payment disclosed under Section 6(b) divided by the number of months in the Lease Term) due at the beginning of each Monthly Period, plus a late tee under Section 23 if paid late. Our demand for or acceptance of these payments does not give you the right to keep the Vehicle and does not constitute our agreement to extend the Lease Term. Additionally, if you have not returned or purchased the Vehicle by the Maturity Date as required, then we may declare you in default and charge you the amount that you would have owed if you had exercised your purchase option at the end of the Lease Term (see Section 32) as damages for failure to return the Vehicle. You agree to pay this amount in full, and if you do pay, then we will sell the Vehicle to you under Section 32. We may charge you this amount even if you have made one or more payments to us after the end of the Lease.

**34. EXCESS WEAR AND USE.** You will not subject the Vehicle to more than normal wear and use. If you do not purchase the Vehicle, at the end of the Lease Term you will owe us for excess mileage under Section 13, plus our actual or estimated cost to repair or replace any excess wear and use to the Vehicle, whether or not we make repairs. We will total the costs of items as follows: (a) all missing or damaged items (b) as follows, and you will owe us any portion of the total in excess of costs expected based on normal wear and use, plus the other amounts set forth at the end of this Section: (a) holes, tears, burns, stains, strong odors or excessively worn areas in the carpet, other interior surfaces or convertible top; (b) scratches, chips, dents, pits, rust, holes or cracks in the wheels or exterior surfaces, windshield or other glass surfaces or metal work; (c) cracked, broken or missing windows, doors, lights, trim, mirrors or antennae; (d) missing, damaged or nonworking mechanical equipment, safety or emissions control equipment, electrical or other parts or accessories; (e) damage to the Vehicle's frame or alignment; (f) damage due to improper, poor quality or incomplete repairs or paint work. You also will remain liable to us for the full cost of any such items resulting from intentional or willful abuse or misuse. In addition, you will owe us the full cost of any missing, damaged or mismatched tires (including spare), any tire that has less than 1/8th inch tread at its lowest point or that is not comparable in quality to the original equipment, and any missing manual or missing or nonworking keys or remote entry devices.

---

## ADDITIONAL TERMS AND CONDITIONS

**35. INDEMNITY AND NO INTENDED THIRD PARTY BENEFICIARY RIGHTS.** Except as expressly provided in this Lease, you will hold us harmless and indemnify us from any and all claims, liability, loss and expense (including court costs and attorneys' fees) arising from or related to the use, maintenance, condition or possession of the Vehicle, or your failure to perform any obligation in this Lease. This Lease shall not be deemed to confer any rights or remedies upon any person, including but not limited to any rights to enforce these terms, other than by Chase, and its respective successors and assigns.

**36. ODOMETER STATEMENTS.** Whether or not you purchase the Vehicle, when this Lease terminates you must give us a written statement regarding the odometer reading as required by federal and/or state law. Failure to complete this statement upon our request or giving false information may result in fines and/or imprisonment.

**37. ASSIGNMENT.** This is a true lease and you will not own any equity in the Vehicle unless you exercise the purchase option in Section 32. **You will not assign, sublease or transfer any interest in the Vehicle or your rights or obligations under this Lease without getting our written permission first.** After any such assignment, you will remain fully responsible for the performance of this Lease even if we gave you our permission. We may assign or transfer any interest in the Vehicle or our rights and obligations under this Lease without your permission and without notifying you first.

**38. SECURITY DEPOSIT.** You will not earn any interest, benefit, increase or profits on any security deposit. You further agree that we may retain any interest, benefit, increase or profits we earn on your security deposit or other property in which we have a security interest. We may commingle your security deposit with our other funds. We may use your security deposit to pay or satisfy any amount or obligation you fail to pay or satisfy under this Lease. After this Lease terminates, we will refund to you any unused portion of your security deposit.

**39. NOTICES AND ADDRESS CHANGES.** You will mail or deliver any written notices to us in connection with this Lease to the address we provide for the type of notice or, if none, our address for general correspondence. Notices sent to an address we designate for payments only are not effective. If your phone number, or any address we have for you or the Vehicle, changes or is incorrect, you will give us an updated phone number or address within **15 days**. We may send you any notices, bills, correspondence and any refunds owed to you to your address in Section 1, or to any other address you provide us or that we may obtain directly or indirectly from the U.S. Postal Service. If the California Department of Motor Vehicles has your address, you have not requested confidentiality of your address and by signing this Lease you waive the provisions of Section 1808.21 of the California Vehicle Code and authorize the California Department of Motor Vehicles to furnish your address to the holder of this Lease until this Lease is paid in full.

**40. USE OF TELEPHONE, EMAILS AND TEXT MESSAGES.** In addition to any other lawful method of communication, we and our agents and representatives may contact you regarding the origination, servicing, and collection of amounts due under this Lease at any telephone number or email address you give us or where we believe we may reach you. You give us and our agents and representatives permission to use automatic telephone dialing systems to call you, send you text messages or leave you artificial or prerecorded voice messages, at any telephone number you give us, including a telephone number for a cellular phone or mobile device or any number we obtain for you from another source. In addition, you give us permission to monitor or record telephone calls between you and us regarding this Lease.

**41. CONSUMER REPORTS AND VERIFICATION.** You agree that we may obtain one or more consumer reports (including credit reports) about you from consumer reporting agencies in connection with your application for this Lease and for the purpose of taking collection action, updating, renewing, refinancing, modifying or extending this Lease. You agree that we may also verify your employment, income, assets and debts, and you hereby authorize anyone receiving a copy of this Lease to give us such information.

**NEGATIVE CREDIT REPORTING NOTICE: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**42. ADDITIONAL INFORMATION AND DOCUMENTS.** You agree to (a) provide any additional information provided in connection with your application for this Lease, in connection with the Vehicle or your compliance with this Lease, and (b) sign any documents necessary to effect this Lease, including, but not limited to, motor vehicles department forms.

**43. JOINT LESSEES.** If there is more than one Lessee, each Lessee is jointly and severally liable under this Lease. If we release, waive or delay in the enforcement of our rights as to one Lessee, then that will not affect our rights as to the other Lessee. We may, in our sole discretion, pay any refund or other amounts we owe you in connection with this Lease jointly to both Lessees or individually to either Lessee. Also, you agree that notice provided by us to any Lessee is effective notice to all Lessees, including you, except as otherwise required by applicable law. We may also, in our sole discretion, allow one Lessee to exercise any right under this Lease with respect to the Vehicle without the other Lessee's consent or participation and any authorization provided by any Lessee, is effective and binding on you even if you did not provide such authorization.

**44. ASSIGNMENT OF UNEARNED PREMIUMS AND CHARGES.** You assign to us any refunds of unearned premiums or charges for any insurance or optional products or services

38. SECURITY DEPOSIT. You will not earn any interest, benefit, increase or profits on any security deposit. You further agree that we may make any interest, benefit, increase or profits earn on your security deposit. Any other property in which we have a security interest. We may commingle your security deposit with our other funds. We may use your security deposit to pay or satisfy any amount or obligation you fail to pay or satisfy under this Lease. After this Lease terminates, we will refund to you any unused portion of your security deposit.

**39. NOTICES AND ADDRESS CHANGES.** You will mail or deliver any written notices to us in connection with this Lease to the address we provide for the type of notice or, if none, our address for general correspondence. Notices sent to an address we designate for payments only are not effective. If your phone number, or any address we have for you or the Vehicle, changes or is incorrect, you will give us an updated phone number or address within **15 days.** We may send you any notices, bills, correspondence and any refunds owed to you to your address in Section 1, or to any other address you provide us or that we may obtain directly or indirectly from the U.S. Postal Service. If the California Department of Motor Vehicles has your address, you have not requested confidentiality of your address and by signing this Lease you waive the provisions of Section 1808.21 of the California Vehicle Code and authorize the California Department of Motor Vehicles to furnish your address to the holder of this Lease until this Lease is paid in full.

**40. USE OF TELEPHONE, EMAILS AND TEXT MESSAGES.** In addition to any other lawful method of communication, we and our agents and representatives may contact you regarding the origination, servicing, and collection of amounts due under this Lease at any telephone number or email address you give us or where we believe we may reach you. You give us and our agents and representatives permission to use automatic telephone dialing systems to call you, send you text messages or leave you artificial or prerecorded voice messages, at any telephone number you give us, including a telephone number for a cellular phone or mobile device or any number we obtain for you from another source. In addition, you give us permission to monitor or record telephone calls between you and us regarding this Lease.

**41. CONSUMER REPORTS AND VERIFICATION.** You agree that we may obtain one or more consumer reports (including credit reports) about you from consumer reporting agencies in connection with your application for this Lease and for the purpose of taking collection action, updating, renewing, refinancing, modifying or extending this Lease. You agree that we may also verify your employment, income, assets and debts, and you hereby authorize anyone receiving a copy of this Lease to give us such information.

**NEGATIVE CREDIT REPORTING NOTICE: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**42. ADDITIONAL INFORMATION AND DOCUMENTS.** You agree to: (a) give us any additional information provided in connection with your application for this Lease, in connection with the Vehicle or your compliance with this Lease, and (b) sign any documents necessary to effect this Lease, including, but not limited to, motor vehicles department forms.

**43. JOINT LESSEES.** If there is more than one Lessee, each Lessee is jointly and severally liable under this Lease. If we release, waive or delay in the enforcement of our rights as to one Lessee, then that will not affect our rights as to the other Lessee. We may, in our sole discretion, pay any refund or other amounts we owe you in connection with this Lease jointly to both Lessees or individually to either Lessee. Also, you agree that notice provided by us to any Lessee is effective notice to all Lessees, including you, except as otherwise required by applicable law. We may also, in our sole discretion, allow one Lessee to exercise any right under this Lease with respect to the Vehicle without the other Lessee's consent or participation and any authorization provided by any Lessee, is effective and binding on you even if you did not provide such authorization.

**44. ASSIGNMENT OF UNEARNED PREMIUMS AND CHARGES.** You assign to us any refunds of unearned premiums or charges for any insurance or optional products or services purchased as part of this Lease.

**45. LIMITED POWER OF ATTORNEY.** You hereby appoint us or our agent as your attorney-in-fact to do the following: (a) settle any insurance claim related to the Vehicle, (b) endorse your name on any check or draft we receive from your insurer or from any other party for damage to or loss of the Vehicle, and (c) to sign your name to any title, registration or other documents related to the Vehicle, for example, state motor vehicles department applications and documents. This power of attorney is coupled with an interest in the Vehicle and is not revocable as long as we have an interest in the Vehicle.

**46. GOVERNING LAW.** Except as otherwise set forth in this Lease, this Lease will be governed by the laws of the state of the Lessor's address (as set forth in Section 1 of this Lease) and federal law.

**47. GENERAL.** If we waive or delay in enforcing any of our rights, it will not be considered a waiver of any of our other rights or later rights. You acknowledge that we have not given you any tax information or advice about this Lease and that we are not passing to you any tax credit or benefit on the Vehicle. Except as otherwise set forth in the Arbitration Provision, if any provision of this Lease is determined to be unenforceable, that provision will be deemed modified as necessary to comply with law and to make the provision enforceable, and all remaining provisions of this Lease will remain in full effect. We may, at our option, apply any refunds we owe you or credits you have under this Lease to reduce any amounts you owe us under this Lease. We are not required to make any credit or refund to you in connection with this Lease if the amount of the credit or refund is less than $1.00.

---

**ARBITRATION PROVISION: PLEASE REVIEW AS THIS AFFECTS YOUR LEGAL RIGHTS**

You and we agree that upon the election of either of us, any claims or disputes relating in any way to your lease account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court). This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. All such claims or disputes are referred to in this agreement as "Claims." However, claims relating to the scope, enforceability or validity of this agreement to arbitrate are for a court of competent jurisdiction to decide. The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis. Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover a deficiency balance, or for individual injunctive relief. Arbitration procedures are generally simpler than court rules, and discovery can be more limited. Certain rights that you have in court may not be available in arbitration.

YOU AND WE AGREE NOT TO: 1) SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING; 2) SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE; 3) BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR 4) SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

If these terms relating to class or representative procedures are legally unenforceable for any reason with respect to a Claim, then this agreement to arbitrate will be inapplicable to that Claim, and the Claim will instead be handled through litigation in court rather than by arbitration. No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

The party filing a Claim in arbitration must select either: JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or this agreement, this arbitration provision and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The single arbitrator will conduct the arbitration and decide the Claim in accordance with all applicable substantive law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. The arbitrator can award damages or other relief provided for by law to you or us, but not to anyone else. The arbitrator's authority is limited to the Claims between you and us.

A party can file a written appeal to the arbitration administrator within 30 days of award issuance. The appeal must request a new arbitration in front of three neutral arbitrators designated by the same arbitration administrators. The panel will reconsider all factual and legal issues, following the same rules of procedure, and will make decisions based on majority vote. Any arbitration decision and award will be final and binding on the named parties and enforceable by any court having jurisdiction.

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law. Rules and forms may be obtained from, and Claims may be filed with JAMS (800.352.5267 or jamsadr.com) or the AAA (800.778.7879 or www.adr.org). Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

---

FORM NO. CAFL-CALIFORNIA (REV. 6/19)

© 2019 JPMorgan Chase Bank, N.A. Member FDIC

# Aston Martin San Diego

US Auto San Diego LLC

10/04/2019 04:00 PM PDT

7820 BALBOA AVE
SAN DIEGO, CA, 92111
858-300-2323 (Office)
https://www.astonmartinsandiego.com
rbower@astonmartinnewportbeach.com

**BILLED TO**

FARID F SHAFIK
FSHAFIK@MSN.COM
357 Andrews Street
06489

**DETAILS**

| DETAILS | Approved (00) |
|---|---|
| TYPE | Charge - Capture |
| APPROVAL | 284566 |
| TRANS ID | 2852 |
| MID | ********2995 |
| TID | 70580436 |
| TERMINAL | 197431 |
| INVOICE | DEAL 10803 |

signature

10/04/19 68.14.64.21                          Farid F. Shafik

Cardmember acknowledges receipt of goods and/or services in the amount of the
total shown hereon and agrees to perform the obligations set forth by the
cardmember's agreement with the issuer.

| ACCOUNT | AMERICAN EXPRESS... 8008 |
|---|---|
| Entry Mode | Manual |
| AMOUNT | USD$5,000.00 |
| **TOTAL** | **$5,000.00** |

900506-23 CT      800-242-6422
P005373203      Christie

X 35553

10/4/2019

DEAL #: 10636 STOCK #: M06514 CUST #: 200068 DMV FEES: $639.00

**DMV**
A Public Service Agency

## APPLICATION FOR REGISTRATION OF NEW VEHICLE
### *FOR DEPARTMENT USE ONLY*

CASHIER DATE LINE STAMP

Dealer Copy

**02584636**

| DATE FIRST SOLD AS A NEW VEHICLE *(MM/DD/YYYY)* | | DATE FIRST OPERATED *(MM/DD/YYYY)* | NRM/INO | | TEMPORARY LICENSE PLATE NUMBER | |
|---|---|---|---|---|---|---|
| 10/01/2019 | | 10/01/2019 | | | AR66W10 | |
| MAKE | YEAR MODEL | BODY TYPE | MOTIVE POWER | NUMBER OF AXLES | | UNLADEN WEIGHT |
| ASTO | 2019 | CV | G | 2 | | |

| VEHICLE IDENTIFICATION NUMBER | M/C ENGINE NUMBER OR ADDITIONAL IDENTIFICATION NUMBER | OHV/MOTORCYCLE DEALERS ONLY |
|---|---|---|
| SCFRMFCW7KGM06514 | | ☐ On-Highway    ☐ Off-Highway |

| FOR CAMP TRAILERS AND TRAILER COACHES | LENGTH IN INCHES | WIDTH IN INCHES | GVWR *(PICKUPS ONLY)* | COUNTY OF RESIDENCE |
|---|---|---|---|---|
| | | | | OUT-OF-STATE |

SOLD TO: PRINT TRUE FULL NAME AS IT APPEARS ON THE DRIVER LICENSE OR ID CARD IN THE ORDER SHOWN BELOW | EQUIPMENT NUMBER | DRIVER LICENSE/ID CARD NO.

(1)   JP MORGAN CHASE BANKNA LSR

| ☐ AND | LAST | FIRST | MIDDLE | SUFFIX | DRIVER LICENSE/ID CARD NO. |
|---|---|---|---|---|---|
| ☐ OR   (2)  SHAFIK FARID LSE | | | | | |

| BUSINESS OR RESIDENCE ADDRESS | APT./STE. NO. | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 357 ANDREWS ST | | SOUTHINGTON | CT | 06489 |
| MAILING ADDRESS—*IF DIFFERENT FROM ABOVE (OR LOCATION IF TRAILER COACH)* | APT./STE. NO. | CITY | STATE | ZIP CODE |
| | | | | |

| LIENHOLDER OR LEGAL OWNER—PRINT TRUE FULL NAME (IF NONE, MUST PRINT "NONE" AND INITIAL) | | | ELECTRONIC LIENHOLDER ID. # |
|---|---|---|---|
| JP MORGAN CHASE BANKNA | | | ELT# |
| BUSINESS OR RESIDENCE ADDRESS | APT./STE. NO. | CITY | STATE | ZIP CODE |
| PO BOX 901098 | | FORT WORTH | TX | 76101 |
| LESSEE ADDRESS—REQUIRED WHEN DIFFERENT FROM REGISTERED OWNER ABOVE | APT./STE. NO. | CITY | STATE | ZIP CODE |
| | | | | |

If a passenger vehicle, will it be used for hire or to provide a service of transporting passengers in conjunction with a business?
☐ Yes   ☑ No

**APPLICANT'S CERTIFICATION:** I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | BUYER SIGNATURE(S) | |
|---|---|---|
| 10/01/2019 | (1) X | (2) X |

**CERTIFICATE OF COST**—The dealer signing the certification certifies under penalty of perjury under the laws of the State of California that the cost of the vehicle entered in the Certificate of Cost includes the cost of any equipment that is physically attached to the vehicle, plus any trade-in allowances (exclude state or local taxes, insurance and finance charges).

| | DATE PURCHASED/ACQUIRED | COST |
|---|---|---|
| A — Cost of vehicle purchased as a: ☑ Complete vehicle  ☐ Chassis only  ☐ Cab and chassis | 10/01/2019 | $ 246,180.09 |

B — Cost of trailer coach including all permanently attached items (wall to wall carpeting, factory air conditioning, built-in appliances, etc.).

## ODOMETER DISCLOSURE STATEMENT

Federal and state law requires that you state the mileage upon transfer of ownership. Failure to complete or making a false statement may result in fines and/or imprisonment.

The odometer now reads | 0 | 0 | 0 | 1 | 1 | 3 | 5 | (no tenths) miles, and to the best of my knowledge reflects the **ACTUAL** mileage *unless one of the following statements is checked.*

**WARNING** — ☐ is **NOT** the actual mileage.   ☐ Mileage **EXCEEDS** the odometer mechanical limits.

| | | DEALER'S NUMBER |
|---|---|---|
| | | 00042 |

I/we certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | SIGNATURE OF SELLER OR COMPANY AGENT | PRINTED SELLER'S FULL NAME/COMPANY AGENT | ADDRESS |
|---|---|---|---|
| 10/01/2019 | | JN MARTIN SAN DIEGO | 7820 BALBOA AVE , SAN DIEGO, CA 92111 |
| DATE | SIGNATURE OF BUYER OR COMPANY AGENT | HAND-PRINTED BUYER'S FULL NAME/COMPANY AGENT | ADDRESS |
| 10/01/2019 | | FARID F. SHAFIK | 357 ANDREWS ST , SOUTHINGTON, CT 06489 |

REG 397 (REV. 1/2019)

**AFP-701**



Made in the USA 🇺🇸

# DUE BILL

NOTE: THE BELOW PROMISED WORK IS THE ONLY WORK TO BE PERFORMED FREE OF CHARGE. ANY
ADDITIONAL WORK WILL BE CHARGED FOR IN ACCORDANCE WITH THE TYPE OF WARRANTY ISSUED AT
TIME OF SALE, AND WILL BE CASH ON DELIVERY. ALL WORK MUST BE DONE IN OUR SHOP. WE SUGGEST
YOU MAKE A SERVICE APPOINTMENT IN ADVANCE PRIOR TO DROPPING OFF THE VEHICLE 2019

## WORK PROMISED TO BE PERFORMED AT TIME OF SALE

| DATE | DESCRIPTION OF CAR 2019 | LICENSE NO. | CUSTOMER'S NAME | SALESPERSON | STOCK NO. |
|------|------------------------|-------------|-----------------|-------------|-----------|
| 10/01/2019 | ASTO  DB11 | | FARID SHAFIK | BRIGGS, GAR M | 06514 |

### PRESENT THIS ORDER WHEN WORK IS TO BE COMPLETED

1.  TRANSPORTATION

2.  TIRE AND WHEEL 3 YEAR

3.

4.

5.

6.

7.

**Customer** _____   DATE ___ 10/1/2019

**Sales Mgr.** _____   DATE _____

### DUE TO INSURANCE REGULATIONS - NO LOAN CARS AVAILABLE



**FORM# AFP-701** (Rev. 4/17)  American Automotive Forms & Products • Re-order 800-996-2238 - id416306-17
The printer makes no warranty, expressed or implied, as to content or fitness for purpose of this form. Consult your own legal counsel.

© 2016 American Solutions for Business

DEAL #: 10636 STOCK #: M06514 CUST #: 200068 DMV FEES: $639.00

## APPLICATION FOR REGISTRATION OF NEW VEHICLE

**A Public Service Agency**

*FOR DEPARTMENT USE ONLY* ___

CASHIER DATE LINE STAMP

**02584636**

| DATE FIRST SOLD AS A NEW VEHICLE (MM/DD/YYYY) | DATE FIRST OPERATED (MM/DD/YYYY) | NRM/IND | TEMPORARY LICENSE PLATE NUMBER |
|---|---|---|---|
| 10/01/2019 | 10/01/2019 | | AR66W10 |

| MAKE | YEAR MODEL | BODY TYPE | MOTIVE POWER | NUMBER OF AXLES | UNLADEN WEIGHT |
|---|---|---|---|---|---|
| ASTO | 2019 | CV | G | 2 | |

| VEHICLE IDENTIFICATION NUMBER | M/C ENGINE NUMBER OR ADDITIONAL IDENTIFICATION NUMBER | OHV/MOTORCYCLE DEALERS ONLY |
|---|---|---|
| SCFRMFCW7KGM06514 | | ☐ On-Highway   ☐ Off-Highway |

| FOR CAMP TRAILERS AND TRAILER COACHES | LENGTH IN INCHES | WIDTH IN INCHES | GVWR (PICKUPS ONLY) | COUNTY OF RESIDENCE |
|---|---|---|---|---|
| | | | | OUT-OF-STATE |

SOLD TO: PRINT TRUE FULL NAME AS IT APPEARS ON THE DRIVER LICENSE OR ID CARD IN THE ORDER SHOWN BELOW

(1) JP MORGAN CHASE BANKNA LSR

| | EQUIPMENT NUMBER | DRIVER LICENSE/ID CARD NO. |
|---|---|---|

☐ AND
☐ OR    (2) SHAFIK FARID LSE

| LAST | FIRST | MIDDLE | SUFFIX | DRIVER LICENSE/ID CARD NO. |
|---|---|---|---|---|

| BUSINESS OR RESIDENCE ADDRESS | APT./STE. NO. | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 357 ANDREWS ST | | SOUTHINGTON | CT | 06489 |

| MAILING ADDRESS—IF DIFFERENT FROM ABOVE (OR LOCATION IF TRAILER COACH) | APT./STE. NO. | CITY | STATE | ZIP CODE |
|---|---|---|---|---|

| LIENHOLDER OR LEGAL OWNER—PRINT TRUE NAME (IF NONE, MUST PRINT "NONE" AND INITIAL) | ELECTRONIC LIENHOLDER ID. # |
|---|---|
| JP MORGAN CHASE BANKN | ELT# |

| BUSINESS OR RESIDENCE ADDRESS | APT./STE. NO. | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| PO BOX 901098 | | FORT WORTH | TX | 76101 |

| LESSEE ADDRESS—REQUIRED WHEN DIFFERENT FROM REGISTERED OWNER ABOVE | APT./STE. NO. | CITY | STATE | ZIP CODE |
|---|---|---|---|---|

If a passenger vehicle, will it be used for hire or to provide a service of transporting passengers in conjunction with a business?
☐ Yes   ☑ No

**APPLICANT'S CERTIFICATION:** I (we) certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | BUYER'S SIGNATURE(S) | |
|---|---|---|
| 10/01/2019 | (1) X | (2) X |

**CERTIFICATE OF COST**—The dealer signing the certification certifies under penalty of perjury under the laws of the State of California that the cost of the vehicle entered in the Certificate of Cost includes the cost of any equipment that is physically attached to the vehicle, plus any trade-in allowances (exclude state or local taxes, insurance and finance charges).

| | DATE PURCHASED/ACQUIRED | COST |
|---|---|---|
| A—Cost of vehicle purchased as a: ☑ Complete vehicle  ☐ Chassis only  ☐ Cab and chassis | 10/01/2019 | $ 246,180.09 |

B — Cost of trailer coach including all permanently attached items (wall to wall carpeting, factory air conditioning, built-in appliances, etc.).

### ODOMETER DISCLOSURE STATEMENT

Federal and state law requires that you state the mileage upon transfer of ownership. Failure to complete or making a false statement may result in fines and/or imprisonment.

The odometer reading is 0 0 0 1 3 9 (no tenths) miles and to the best of my knowledge reflects the ACTUAL mileage unless one of the following statements is checked.

WARNING — ☐ Is NOT the actual mileage.   ☐ Mileage EXCEEDS the odometer mechanical limits.

I/we certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| | | DEALER'S NUMBER |
|---|---|---|
| | | 00042 |

| DATE | SIGNATURE OF SELLER OR COMPANY AGENT | PRINTED SELLER'S FULL NAME/COMPANY AGENT | ADDRESS |
|---|---|---|---|
| 10/01/2019 | | JON MARTIN SAN DIEGO | 7820 BALBOA AVE , SAN DIEGO, CA 92111 |

| DATE | SIGNATURE OF BUYER OR COMPANY AGENT | HAND PRINTED BUYER'S FULL NAME/COMPANY AGENT | ADDRESS |
|---|---|---|---|
| 10/01/2019 | | FARID F. SHAFIK | 357 ANDREWS ST SOUTHINGTON, CT 06489 |

REG 397 (REV. 1/2019)        **— DMV copy —**

---

**A Public Service Agency**

### NEW VEHICLE DEALER NOTICE TEMPORARY IDENTIFICATION
(Must be affixed to the vehicle before delivery to the purchaser)

**02584636**

| MAKE | BODY TYPE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| ASTO | CV | SCFRMFCW7KGM06514 |

| DATE FIRST SOLD AS A NEW VEHICLE (MM/DD/YYYY) | DEALER'S NUMBER | SALESPERSON'S NUMBER | TEMPORARY LICENSE PLATE NUMBER |
|---|---|---|---|
| 10/01/2019 | 00042 | | AR66W10 |

SOLD TO: PRINT TRUE FULL NAME(S)

JP MORGAN CHASE BANKNA LSR   SHAFIK FARID LSE

ADDRESS

357 ANDREWS ST , SOUTHINGTON, CT 6489

| NOTE: UPON TRANSFER OR SALE, DEALER MUST ENTER ODOMETER READING HERE: | 0 0 0 1 3 9 | IMPORTANT! ENTER BOTH DEALER'S AND SALESPERSON'S NUMBERS. This is a notice of purchase of vehicle. Do not use as an application for registration or title. |
|---|---|---|

REG 397 (REV. 1/2019)

Plg. 10/18

**LAW** LAWCA-365

## TIRE CHAIN DISCLOSURE

**AS EQUIPPED, THIS VEHICLE MAY NOT BE OPERATED WITH TIRE CHAINS BUT MAY ACCOMMODATE SOME OTHER TYPE OF TIRE TRACTION DEVICE. SEE THE OWNER'S MANUAL FOR DETAILS.**

The undersigned acknowledges that prior to signing a contract to buy or lease the subject new vehicle, the undersigned read this disclosure and received a signed copy.

Dated: 10/18/19

(Buyer(s) Signature)
(Lessee(s) Signature)

(Co-Buyer(s) Signature)
(Co-Lessee(s) Signature)

**LAW** FORM NO. LAWCA-365 REV. 4/12  The Reynolds and Reynolds Company  TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**DMV** A Public Service Agency

**VEHICLE/VESSEL TRANSFER AND REASSIGNMENT FORM**

DEAL: 10636
LEASE
STK# M06514

**INSTRUCTIONS ON REVERSE SIDE — ALL SIGNATURES MUST BE IN INK — PHOTOCOPIES NOT ACCEPTED**

*This form is not the ownership certificate. It must accompany the titling document or Application for Duplicate Title. For Car Buyer's Bill of Rights, visit www.dmv.ca.gov.*

ACQUISITION NUMBER (DISMANTLER ONLY)

## SECTION 1 — VEHICLE/VESSEL DESCRIPTION

CUST# 200068

| IDENTIFICATION NUMBER | YEAR MODEL | MAKE | LICENSE PLATE/CF NO. | MOTORCYCLE ENGINE NUMBER |
|---|---|---|---|---|
| SCFRMFCW7KGM06514 | 2019 | DB11 CPE ASTON M | | |

## SECTION 2 — BILL OF SALE

ASTON MARTIN SAN DIEGO

I/We _____ PRINT SELLER'S NAME(S) sell, transfer, and deliver the above vehicle/vessel

to FARID SHAFIK _____ on 10/01/19 for the amount of $ VALUE RCV'D
    PRINT BUYER'S NAME(S)              MO DAY YEAR                    (SELLING PRICE)

If this was a gift, indicate relationship: _____ (e.g., parents, spouse, friend, etc.) $ _____
                                                                                          (GIFT VALUE)

## SECTION 3 — ODOMETER DISCLOSURE STATEMENT (Void if Mileage is Altered or Erased)

*Federal and State Law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.*

The odometer now reads [   ] [   ] [   ] , [ 1 ] [ 3 ] [ 9 ] [10/ths] **(no tenths)** miles, and to the best of my knowledge reflects the **ACTUAL** mileage *unless one of the following statements is checked.*

**WARNING—ODOMETER DISCREPANCY**

☐ Odometer reading is **NOT** the actual mileage      ☐ Mileage **EXCEEDS** the odometer mechanical limits

Explain odometer discrepancy: _____

## SECTION 4 — BUYER AND SELLER (MUST have ... it his or her name, date and sign this section.)

**...ER'S SECTION**

...knowledge the odometer reading and the ... the transfer. I certify (or declare) under penalty of perjury under ... laws of the State of California that the fore... is true and correct.

| BUYER'S NAME | SIGNATURE | DATE | DL/ID OR DEALER/DISM # |
|---|---|---|---|
| ...P MORGAN CHASE BANK,N.A. (LESSOR) | | 10/01/19 | |
| PRINT BUYER'S NAME (LESSEE) FARID F-SHAFIK | SIGNATURE X | DATE 10/1/2019 | |
| PRINT BUYER'S NAME | SIGNATURE X | DATE | DL/ID OR DEALER/DISM # |

| BUYER'S MAILING ADDRESS | CITY | STATE | ZIP CODE | DAYTIME TELEPHONE NO. |
|---|---|---|---|---|
| 357 ANDREWS ST | SOUTHINGTON | CT | 06489 | (860)621-7843 |

**SELLER'S SECTION**

*I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| PRINT SELLER'S NAME | SIGNATURE | DATE | DL/ID OR DEALER/DISM # |
|---|---|---|---|
| ASTON MARTIN SAN DIEGO | X | 10/01/19 | |
| PRINT SELLER'S NAME | X | | |
| PRINT SELLER'S NAME | X | | |

| SELLER'S MAILING ADDRESS | CITY | STATE | ZIP CODE | DAYTIME TELEPHONE NO. |
|---|---|---|---|---|
| 320 BALBOA AVENUE | SAN DIEGO, CA | | 92111 | (858) 362-6001 |

## SECTION 5 — POWER OF ATTORNEY

FARID SHAFIK _____ appoint ASTON MARTIN SAN DIEGO
    PRINT NAME(S)                              PRINT NAME(S)

...y attorney in fact, to complete all necessary documents, as needed, to transfer ownership as required by law.

| SIGNATURE REQUIRED BY PERSON APPOINTING POWER OF ATTORNEY | DATE |
|---|---|
| X | 10/01/19 |
| SIGNATURE REQUIRED BY PERSON APPOINTING POWER OF ATTORNEY | DATE |
| X | |



1. Select the 'Print' button to print 1 copy of each label.
2. The Return Shipment instructions, which provide your recipient with information on the returns process, will be printed with the label(s).
3. After printing, select your next step by clicking one of the displayed buttons.

**Note:** To review or print individual labels, select the Label button under each label image above.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**PRIVACY NOTICE**

- Information provided to the Department of Motor Vehicles' (DMV) Registration Operations Division as memorialized on this form is subject to the limitations in the Information Practices Act (Civil Code 1798 et seq.), the Driver's Privacy Protection Act (18 U.S.C. 2721-2725), the California Vehicle Code (CVC) and other applicable state and federal laws and regulations.

- Personal information is collected under authority of the CVC, Divisions 3, 3.4, 3.6, and 4. The principal purposes within DMV for which this information is used are for the issuance of temporary and permanent license plates (when applicable) and issuance of vehicle title and registration.

- All information on this form is mandatory except where noted. Failure to provide the requested information is cause for refusal to issue or cancellation of a motor vehicle registration and/or title.

- DMV may verify the information and documents you provide with other governmental agencies.

- DMV shares your information with other governmental agencies, courts, law enforcement, and commercial entities as authorized by law. For more information regarding specific CVC Sections or how DMV shares your information, please see "How Information is Protected or Disclosed" available on the DMV website at *www.dmv.ca.gov.*

- You may obtain a copy of your vehicle registration record at *www.dmv.ca.gov* or at any DMV field office during regular office hours. To make an appointment to visit a DMV field office during regular business hours, call (800) 777-0133. To access your personal information in DMV records, or to request correction/amendment of your record, please see "IPA Guidelines" on the DMV website at *www.dmv.ca.gov.*

- DMV's Privacy Policy is located at *www.dmv.ca.gov* under the "Privacy Policy" link at the bottom of the webpage.

- Questions regarding this Notice and regarding any system of records, location of records and the categories of any persons who use the information in those records should be addressed to:

  Department of Motor Vehicles
  ATTN: Chief Privacy Officer – MS F127
  PO Box 932328
  Sacramento, CA 94232-3280

## Return Shipment Instructions



Return Shipment Instructions

1. Place the shipping label on the container's most visible side away from seams.

2. Ship your package one of three ways:

 - Use your regular scheduled pickup.
 - Drop off at FedEx. Find your closest location at **fedex.com/locate** or by calling 1.800.GoFedEx 1.800.463.3339
 - Schedule a pickup.  No account number required but label information may be needed. Go to
   **fedex.com/returnpickup** for FedEx Ground labels with "G" or "PRP" or call 1.800.GoFedEx 1.800.463.3339 and say:
   o "Return Manager" or "PRP" for FedEx Ground labels with "G" or "PRP"
   o "Express Return" for FedEx Express labels with "E" or "Billable Stamp"

**Prepare Your Package With Care.**
 - Use an appropriate container, cushioning materials and at least three strips of packing tape.
 - If reusing packaging, remove or black out old shipping labels including their barcode(s).

**Special Instructions from the merchant:**

# *LAW* LAWCA-FLPRA

## FRONT LICENSE PLATE ACKNOWLEDGEMENT

DEAL# 10636          CUSTOMER# 200068          STOCK# M06514

| Buyer/Lessee Name(s) ("you") | Contract Date |
|---|---|
| FARID SHAFIK | 10/01/2019 |

| Address (Street) | City | State | Zip |
|---|---|---|---|
| 357 ANDREWS ST | SOUTHINGTON | CT | 06489 |

| Year | Make | Model | VIN |
|---|---|---|---|
| 2019 | ASTON MARTIN | DB11 CPE | SCFRMFCW7KGM06514 |

### VEHICLE IS EQUIPPED WITH A FRONT LICENSE PLATE BRACKET

You have observed and acknowledge that this Vehicle is equipped with a bracket or other means of securing a front license plate and understand that California law requires a license plate to be displayed from and securely fastened to the front of this Vehicle.

10/01/2019

| Date | Buyer/Lessee Signature | Co-Buyer/Co-Lessee Signature |
|---|---|---|

## - OR -

### VEHICLE IS **NOT** EQUIPPED WITH A FRONT LICENSE PLATE BRACKET AT CUSTOMER'S REQUEST

You have been offered but expressly refuse installation of a bracket or other means of securing a front license plate. You understand that California law requires a license plate to be displayed from and securely fastened to the front of this Vehicle and that the hardware necessary to securely fasten the front plate to this Vehicle is available from the dealer.

10/1/2019

| Date | Buyer/Lessee Signature | Co-Buyer/Co-Lessee Signature |
|---|---|---|

*LAW* FORM NO. LAWCA-FLPRA (REV. 4/12)
© 2012 The Reynolds and Reynolds Company  TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW LAWCA-228RS



Ptg. 6/18

# AGREEMENT TO FURNISH INSURANCE POLICY
(TO BE USED WITH SECURITY AGREEMENT ON SALE OF VEHICLE)

Date 10/01/2019

TO SELLER ASTON MARTIN SAN DIEGO

The undersigned Purchaser(s) agree(s) to furnish his/their own Insurance Policy, covering property which is the subject of a Security Agreement dated this 1ST _____ day of OCTOBER _____ , YR 19

The vehicle referred to herein is described as follows:

| Year | Make | Model | Body | Vehicle Identification No. |
|------|------|-------|------|----------------------------|
| 19 | ASTO | DB11 | CV | SCFRMFCW7KGM06514 |
| | | | ONE | |

Such Insurance Policy must be delivered to the Seller within _____ days from the date hereof, and if Seller does not receive such Policy by the time stated, Seller may (but is not required to) procure insurance of the kind and type agreed to be furnished under the terms of the above mentioned Security Agreement.

Ins.Co. _____ Agent _____

ADDRESS OF AGENT - STREET            CITY        STATE        ZIP        AGENT'S PHONE NUMBER

Policy No. _____ Exp. Date _____

☐ Fire & Theft -  ☐ Additional Coverage -  ☐ $ _____ Deductible Comprehensive -  ☐ $ _____ Deductible Collision

In the event I fail to furnish a valid insurance policy, or written evidence, from an insurance company for comprehensive and deductible collision insurance coverage, within the time specified from above date, I hereby agree to pay to Seller or its assignees any earned premium for any policy they may have to place for the above described vehicle in accordance with payment procedures established under California Civil Code Section 2982.8.

I/we further agree to assume forthwith any and all responsibility for damage to the property referred to above or resulting from the use, maintenance or operation thereof, and agree to hold Seller free of any loss, or liability, resulting from any damage to said property or from the use, maintenance or operation thereof.                Loss Payee ___ MORGAN CHASE BANK, N.A.

**NOTICE TO BUYER:** This Agreement does not authorize the ordering of Public **Liability or Property Damage Insurance.**
Any insurance ordered by the financial institution will cover loss of or damage to the above described vehicle only and **will not include Public Liability or Property Damage Insurance.**

"WARNING: IT IS YOUR RESPONSIBILITY UNDER CALIFORNIA LAW TO        IN LIABILITY INSURANCE OR BE SUBJECT TO PENALTIES FOR
VIOLATING SECTION 16020 OF THE VEHICLE CODE, WHICH MAY INCLUD        IS OF LICENSE OR A FINE. THE INSURANCE ACQUIRED BY THE
LIENHOLDER DOES NOT PROVIDE LIABILITY COVERAGE AND DOES NOT        Y YOUR RESPONSIBILITY UNDER CALIFORNIA LAW."
                                 357 ANDREWS ST

FARID SHAFIK        SOUTHINGTON CT 06489        X _____

BUYER'S NAME (Printed)                ADDRESS                BUYER'S SIGNATURE

(860)621-784 3        860-621-4412        X _____

HOME PHONE                BUSINESS PHONE                CO-BUYER'S SIGNATURE

**LAW** FORM NO. LAWCA-228RS  REV. 5/13  ©2013  The Reynolds and Reynolds Company  TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-0055
The Printer makes no warranty, express or implied, as to content or fitness for purpose of this form. Consult your own legal counsel.

**POWER OF ATTORNEY**

A Public Service Agency

## VEHICLE/VESSEL DESCRIPTION

| IDENTIFICATION NUMBER | YEAR MODEL | MAKE | LICENSE PLATE/CF # | MOTORCYCLE ENGINE # |
|---|---|---|---|---|
| CFRMFCWJKGM00514 | 2019 | ASTON MARTIN | | |

I, _____FARID  F.  SHAFIK_____
PRINT NAME

I,_____
PRINT NAME

appoint:

_____
PRINT NAME

as my attorney in fact, to complete all necessary documents, as needed, to transfer ownership as required by law.

**ALL SIGNATURES MUST BE IN INK**

*I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| SIGNATURE REQUIRED BY PERSON APPOINTING POWER OF ATTORNEY | CITY | STATE | ZIP CODE | DATE | DL, ID, OR DEALER # |
|---|---|---|---|---|---|
| | SOUTHINGTON | CT | 06489 | 10/1/2019 | |
| SIGNATURE REQUIRED BY PERSON APPOINTING POWER OF ATTORNEY | CITY | STATE | ZIP CODE | DATE | DL, ID, OR DEALER # |

REG 260 (REV. 3/2007) WWW

---

CUT HERE AND KEEP THIS COPY FOR YOUR RECORDS.

**POWER OF ATTORNEY**

A Public Service Agency

## VEHICLE/VESSEL DESCRIPTION

| IDENTIFICATION NUMBER | YEAR MODEL | MAKE | LICENSE PLATE/CF # | MOTORCYCLE ENGINE # |
|---|---|---|---|---|
| SCFRMFCW7KGM06514 | 2019 | ASTON MARTIN | | |

I, _____FARID  F.  SHAFIK_____
PRINT NAME

I,_____
PRINT NAME

appoint:

_____
PRINT NAME

as my attorney in fact, to complete all necessary documents, as needed, to transfer ownership as required by law.

**ALL SIGNATURES MUST BE IN INK**

*I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| SIGNATURE REQUIRED BY PERSON APPOINTING POWER OF ATTORNEY | CITY | STATE | ZIP CODE | DATE | DL, ID, OR DEALER # |
|---|---|---|---|---|---|
| | SOUTHINGTON | CT | 06489 | 10/1/19 | |
| SIGNATURE REQUIRED BY PERSON APPOINTING POWER OF ATTORNEY | CITY | STATE | ZIP CODE | DATE | DL, ID, OR DEALER # |

REG 260 (REV. 3/2007) WWW

U N I S E T | The Reynolds and Reynolds Company | U N I S E T

## MONRONEY (MSRP) STICKER REMOVAL INSTRUCTIONS

TO: _____ ("Dealer")
    ASTON MARTIN SAN DIEGO

### REGARDING THE FOLLOWING VEHICLE:

2019 ASTON MARTIN    DB11 CPE
SCFRMFCW7KGM06514
_____ ("Vehicle")

    The undersigned confirms the following facts and instructs and authorizes Dealer as follows:

1.    I am the buyer or lessee of the Vehicle. All agreements and documents respecting the purchase or lease of the Vehicle have been completed and signed, and I have received physical delivery of the Vehicle.

2.    In lieu of personally removing the manufacturer's Suggested Retail Price (MSRP) window sticker (the "Monroney Sticker"), which I would otherwise immediately do, I hereby instruct and authorize Dealer's personnel, acting on my behalf, to remove the Monroney Sticker, whether or not such removal might affect the legibility of the sticker.

3.    I request dealer to place the removed sticker, if intact and legible, or a copy of it, if available, in the glove box of the vehicle.

FORM F432 (REV. 11/02)
© 2005 The Reynolds and Reynolds Company
TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Signature of Buyer or Lessee

# EXHIBIT 2

| VALID ONLY AFTER RESOLVING ALL COMPLIANCE ISSUES | CONNECTICUT REGISTRATION CERTIFICATE<br>KEEP THIS PORTION IN YOUR VEHICLE - DO NOT MAIL<br>INSURANCE SHALL BE MAINTAINED AS REQUIRED BY CT LAW | | | | | | VALID ONLY AFTER PAYMENT RECEIVED BY DMV |
|---|---|---|---|---|---|---|---|

| PLATE NUMBER<br>AV99641 | PLATE CLASS<br>PASSENGER | EXP DATE<br>12/03/2021 | VEHICLE IDENTIFICATION NUMBER<br>SCFRMFCW7KGM06514 | YR<br>19 | MAKE<br>ASTON | MODEL<br>DB11 |
|---|---|---|---|---|---|---|

| VEHICLE TYPE<br>PASSENGER | REGISTERED USAGE<br>REGULAR | LIGHT WT<br>4,200 | GVWR | DECLARED WT | STAND | SEAT | AXLES | COLOR<br>RED | STYLE<br>2D |
|---|---|---|---|---|---|---|---|---|---|

| HAZ MAT?<br>N | TITLE<br>Y | EMISSIONS DUE | TOTAL FEE<br>$195.00 | PLATE TYPE<br>STANDARD | TOWN<br>131 | TAX TOWN<br>SOUTHINGTON | WILLIMANTIC - FULL SERVICE 12/04/2019 |
|---|---|---|---|---|---|---|---|

OWNER(S): JP MORGAN CHASE BANK NA

COMMISSIONER OF MOTOR VEHICLES

NEW RECORD   *Sibongile Magubane*

JP MORGAN CHASE BANK NA
P O BOX 901098
FORT WORTH, TX 76101

`AV 7764 100 10 500 202112036`

| VALID ONLY AFTER RESOLVING ALL COMPLIANCE ISSUES | CONNECTICUT REGISTRATION CERTIFICATE<br>KEEP THIS PORTION IN YOUR VEHICLE - DO NOT MAIL<br>INSURANCE SHALL BE MAINTAINED AS REQUIRED BY CT LAW | | | | | | VALID ONLY AFTER PAYMENT RECEIVED BY DMV |
|---|---|---|---|---|---|---|---|

| PLATE NUMBER<br>AV99641 | PLATE CLASS<br>PASSENGER | EXP DATE<br>12/03/2023 | VEHICLE IDENTIFICATION NUMBER<br>SCFRMFCW7KGM06514 | YR<br>19 | MAKE<br>ASTON | MODEL<br>DB11 |
|---|---|---|---|---|---|---|

| VEHICLE TYPE<br>PASSENGER | REGISTERED USAGE<br>REGULAR | LIGHT WT<br>4200 | GVWR | DECLARED WT | STAND | SEAT | AXLES | COLOR<br>RED | STYLE<br>2D |
|---|---|---|---|---|---|---|---|---|---|

| HAZ MAT?<br>N | TITLE<br>Y | EMISSIONS DUE | TOTAL FEE<br>$105.00 | PLATE TYPE<br>STANDARD | TOWN<br>131 | TAX TOWN<br>SOUTHINGTON | 9/30/2021 |
|---|---|---|---|---|---|---|---|

OWNER(S): JP MORGAN CHASE BANK NA

COMMISSIONER OF MOTOR VEHICLES

RENEWAL   *Sibongile Magubane*

JP MORGAN CHASE BANK NA
P O BOX 901098
FORT WORTH, TX 76101

↓ TEAR OFF AND RETURN WITH PAYMENT ↓   R2 0001402110130095500   AV9964100105002021120031

# EXHIBIT 3A

        

# MILLER MOTORCARS

| CUSTOMER NO. 21243 | | ADVISOR DAN | 96 | TAG NO. 6514 | INVOICE DATE 06/16/20 | INVOICE NO. ASCS99698 |
|---|---|---|---|---|---|---|
| FARID SHAFIK | | LABOR RATE 195.00 | LICENSE NO. | MILEAGE 219 | COLOR VOLCANO RED | STOCK NO. |
| | | YEAR / MAKE / MODEL 19/ASTON MARTIN/DB11/2DR CPE VOLANTE | | | DELIVERY DATE | DELIVERY MILES |
| | | VEHICLE I.D. NO. S C F R M F C W 7 K G M 0 6 5 1 4 | | | SELLING DEALER NO. | PRODUCTION DATE |
| | | F.T.E. NO. | | P.O. NO. | R.O. DATE 05/06/20 | |
| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS | | | | MO: 246 |

```
JOB#  1 CHARGES--------------------------------------------------------

LABOR------------------------------------------------------------------
J# 1 51ASZ01       BODY ELECT CONCERN   HOURS:  17.35 TECH(S):767        WARRANTY
         CLIENT STATES AIR BAG FAULT LIGHT IS ON.
         CONFIRMED AIR BAG FAULT LIGHT IS ON. SCANNED FOR FAULTS WITH
         ASTON MARTIN SCAN TOOL AND FOUND CODE B001013 FOR PASS.
         AIRBAG CIRCUIT OPEN. DATALOGGED AIR BAG AND STAGE 1
         RESISTANCE IS NOT STABLE WHILE STAGE 2 REMAINS STEADY.
         REMOVED PASSENGER SEAT SWITCH PANEL AND 2 FORWARD PANELS AS
         WE ALL THE PLATE BEHIND PANEL TO ACCESS AIRBAG CONNECTION.
         CHECKED GROUND G-FA-004 AND CONNECTOR C38.9. DATALOGGED
         WHILE PULLING WIRES TO SEE CONNECTION WAS ISSUE. WAS UNABLE
         TO REMOVE INFLATER OR CONNECTOR DUE TO LIMITED ACCESS.
         OPENED SPOTLIGHT AM-MMC-RBO-0055. GROUND CHECKS OKAY.
         APPLIED STABILANT TO CONNECTOR AND RESISTANCE BECAME MORE
         STEADY. CONFIRMED WIRING WAS OKAY. SPOTLIGHT RECOMMENDS TO
         REPLACE PASSENGER AIR BAG ANYWAYS. REMOVED DASH FROM VEHICLE
         AND DISASSEMBLED. REPLACED AIRBAG WITH NEW LOCK NUTS.
         REINSTALLED ALL REMOVED INTERIOR TRIM AND TESTED. SRS LIGHT
         DID NOT RETURN AND ALL IS WITHIN SPEC. ROAD TESTED VEHICLE.

PARTS------QTY---FP-NUMBER--------------DESCRIPTION------------------UNIT PRICE--
         1     HY53-044H31-AD        PASS AIRBAG ASSY                   WARRANTY
         8     703163                NUT M6 FLG LOCKI                   WARRANTY
                                                      TOTAL - PARTS       0.00

JOB#  1 TOTALS---------------------------------------------------

                       JOB#  1 JOURNAL PREFIX ASCS  JOB# 1 TOTAL         0.00
JOB#  2 CHARGES-------------------------------------------------------

LABOR------------------------------------------------------------------
J# 2 70ASZRS       ROADSIDE ASSISTANCE  HOURS:      TECH(S):40          WARRANTY
         CLIENT STATES FLATBED VEHICLE TO MMC SERVICE FOR AIR BAG
         FAULT.
         TRANSPORTED VEHICLE TO MMC SERVICE UNDER ROAD SIDE PROGRAM
         THROUGH ASTON MARTIN. VEHICLE WAS COMPLETED 6/11 AND
         RETURNED AS A ONETIME GOODWILL GESTURE AT NO COST TO CLIENT
         BY ASTON MARTIN NA. ASTON MARTIN ROADSIDE PROGRAM DETAILS
         SHOULD BE IN DOCUMENTS GIVEN AT TIME OF SALE/DELIVERY BY
         ASTON MARTIN OF SAN DIEGO.

SUBLET-----PO#--------VEND INV#-INV.DATE-DESCRIPTION--------------------------
         131976      99698    05/06/20 FB SHAFIK TO MMC 5/6 MMC         WARRANTY
                                                      TOTAL - SUBLET      0.00

JOB#  2 TOTALS---------------------------------------------------

                       JOB#  2 JOURNAL PREFIX ASCS  JOB# 2 TOTAL         0.00
JOB#  3 CHARGES-------------------------------------------------------

LABOR------------------------------------------------------------------
J# 3 57ASZ         CAMPAIGN             HOURS:   1.00 TECH(S):767        WARRANTY
         PERFORM CAMPAIGN QM -01-1280. ROOF PUMP CHECK
```

## OTHER AVAILABLE SERVICES

Full detail of the car

Horse power upgrades

Vehicle styling enhancements

Paint less dent removal

Touch up and chip removal

Lower front bumper repairs

Damaged wheel repairs

Custom wheel fabrication

Window tinting

Stereo system upgrades

Satellite radio systems

Radar detectors

Laser diffusers

Leather repair

Clear protective film

Car covers

Upholstery products

Apparel and accessories

Transport of your vehicle anywhere

in the Continental US.

Complete body shop

**All these services are available
for all of your other vehicles.**

### DISCLAIMER OF WARRANTIES

The only warranties, if any, applying to the part(s) and/or service are those offered by the manufacturer. The selling dealer hereby expressly disclaims all warranties, either expressed or implied, including any implied warranties of merchantability or fitness for a particular purpose, and neither assumes or authorizes any other person to assume for it any liability in connection with the sale of this part(s) and/or service. Buyer shall not be entitled to recover from the selling dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits, or income, or any other incidental damages.

The Reynolds and Reynolds Company  BRAINTIIVE
SF892255 Q  (07/19)

        

# MILLER MOTORCARS

| CUSTOMER NO. 21243 | ADVISOR DAN | 96 | TAG NO. 6514 | INVOICE DATE 06/16/20 | INVOICE NO. ASCS99698 |
|---|---|---|---|---|---|
| FARID SHAFIK | LABOR RATE 195.00 | LICENSE NO. | MILEAGE 219 | COLOR VOLCANO RED | STOCK NO. |
| | YEAR / MAKE / MODEL 19/ASTON MARTIN/DB11/2DR CPE VOLANTE | | | DELIVERY DATE | DELIVERY MILES |
| | VEHICLE I.D. NO. S C F R M F C W 7 K G M 0 6 5 1 4 | | | SELLING DEALER NO. | PRODUCTION DATE |
| | F. T. E. NO. | | P.O. NO. | R. O. DATE 05/06/20 | |

| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS | MO: 246 |
|---|---|---|---|

```
          WW# 97901
          PERFORMED CAMPAIGN QN-01-1280 AS PER ASTON MARTIN
          SPECIFICATION. CHECKED THE PUMP MOTOR AND FOUND THE NUMBER
          TO BE 081117 AND THE PART MUST BE REPLACED. REPLACED
          CONVERTIBLE ROOF PUMP AS REQUIRED. TESTED OPERATION AND ALL
          WORKS AS SHOULD.

PARTS------QTY---FP-NUMBER--------------DESCRIPTION-------------------UNIT PRICE-
          1    KY53-93-10161     HYD PMP MTR-SA01                        WARRANTY
                                                 TOTAL - PARTS            0.00

JOB#  3 TOTALS----------------------------------------------------------

                    JOB# 3 JOURNAL PREFIX ASCS  JOB#  3 TOTAL             0.00

TOTALS-----------------------------------------------------------------
```

## OTHER AVAILABLE SERVICES

Full detail of the car

Horse power upgrades

Vehicle styling enhancements

Paint less dent removal

Touch up and chip removal

Lower front bumper repairs

Damaged wheel repairs

Custom wheel fabrication

Window tinting

Stereo system upgrades

Satellite radio systems

Radar detectors

Laser diffusers

Leather repair

Clear protective film

Car covers

Upholstery products

Apparel and accessories

Transport of your vehicle anywhere

in the Continental US.

Complete body shop

**All these services are available
for all of your other vehicles.**

```
****************************************
*  [ ] CASH    [ ] CHECK   CK NO. [      ]  *
*                                          *
*  [ ] VISA    [ ] MASTERCARD  [ ] DISCOVER *
*                                          *
*  [ ] AMER XPRESS   [ ] OTHER  [ ] CHARGE  *
*                                          *
*         DATE PAID            CASHIER *
****************************************

THANK YOU FOR YOUR BUSINESS!!
```

| | |
|---|---|
| TOTAL LABOR.... | 0.00 |
| TOTAL PARTS.... | 0.00 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 0.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 0.00 |
| **TOTAL INVOICE $** | **0.00** |

CUSTOMER SIGNATURE

**DISCLAIMER OF WARRANTIES**
The only warranties, if any, applying to the part(s)
and/or service are those offered by the manufac-
turer. The selling dealer hereby expressly disclaims
all warranties, either expressed or implied, includ-
ing any implied warranties of merchantability or
fitness for a particular purpose, and neither
assumes or authorizes any other person to assume
for it any liability in connection with the sale of this
part(s) and/or service. Buyer shall not be entitled
to recover from the selling dealer any consequential
damages, damages to property, damages for loss
of use, loss of time, loss of profits, or income, or
any other incidental damages.

PAGE 2 OF 2          CUSTOMER COPY          [ END OF INVOICE ]     08:17pm

# MILLER MOTORCARS

186 Magee Ave. • Stamford, CT 06902
(203) 661-2555
www.millermotorcars.com

## EXHIBIT 3B

       

BENTLEY   ASTON MARTIN

CELL: 201-725-0219

| CUSTOMER NO | ADVISOR | | TAG NO. | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|---|
| 21243 | EDDIE 68491 | | 6514 | 06/01/22 | ASCS116281 |

| | LABOR RATE | LICENSE NO. | MILEAGE | COLOR | STOCK NO. |
|---|---|---|---|---|---|
| FARID SHAFIK | 229.00 | | 2,407 | VOLCANO RED | |
| 357 ANDREWS STREET | YEAR / MAKE / MODEL | | | DELIVERY DATE | DELIVERY MILES |
| SOUTHINGTON, CT 06489 | 19/ASTON MARTIN/DB11/2DR CPE VOLANTE | | | | |
| | VEHICLE I.D. NO. | | | SELLING DEALER NO. | PRODUCTION DATE |
| | S C F R M F C W 7 K G M O 6 5 1 4 | | | | |
| fshafik@msn.com | P.T.E. NO. | | P.O. NO. | R.O. DATE | |
| | | | | 05/10/22 | |
| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS | | | |
| 860-426-0969 | | | | | MO: 2420 |

JOB# 1 CHARGES-------------------------------------------------------------

## OTHER AVAILABLE SERVICES

LABOR-------------------------------------------------------------
J# 1 51ASZ      BODY ELECTRICAL      HOURS: 11.25 TECH(S):767 ............. WARRANTY
CLIENT STATES THE VEHICLE WILL NOT START.
CONFIRMED VEHICLE WOULD NOT START AND WOULD NOT TAKE A JUMP
AS WELL. PLACED VEHICLE INTO FORCED NEUTRAL FROM UNDERNEATH
VEHICLE AND MOVED INTO SHOP. CHECKED ALL FUSES AND RELATED
CONNECTIONS AND ALL LOOK OKAY. INSTALLED TEST BATTERY TO GET
POWER TO VEHICLE AND VEHICLE WILL CONTINUE TO NOT START.
CLEARED DTC'S AND CAN FAULTS REMAINED FOR HEAD UNIT STAYING
OFFLINE. OPENED SPOTLIGHT CASE AM-MMC-RBO-0162 AND SENT
VIDEO OF CAN TEST AND LOG AS NEEDED. AM TECHNICAL REQUESTED
HSB2 STATUS OF EIS, ECM AND ESL. SWAPPED IN KNOWN GOOD
ELECTRIC IGNITION SWITCH AND RECEIVED THE SAME RESULTS. WAS
REQUESTED TO CHECK REAR BODY MODULE FOR WATER INGRESS.
REMOVED RIGHT TRUNK PANEL AND BRACKET AND THERE WAS NO WATER
AT MODULE. WAS REQUESTED TO REPLACE THE ELECTRIC STEERING
LOCK MODULE AND ELECTRIC IGNITION SWITCH MODULE. REMOVED
STEERING COLUMN AND REPLACED ESL. REMOVED CENTER STACK AND
RELATED BRACKETS TO FULLY REPLACE EIS. WAS ALSO REQUESTED TO
REPLACE BATTERY AS FAILURE WAS CAUSED BY FAULTY MODULES.
ATTEMPTED TO PROGRAM 4 TIMES BEFORE SYSTEM PROGRAMMED.
VEHICLE NOW STARTS BUT AIR BAG FAULT AND STEERING FAULT WAS
ON. USING SPECIAL APPS CODED EIS AND ESL TO VEHICLE.
CONFIRMED LIGHTS CLEARED AND DID NOT RETURN. SET SEATS AND
WINDOWS AS NEEDED. ROAD TESTED VEHICLE AND CONFIRMED ALL
WORKS AS DESIGNED. ALL OK.

PARTS------QTY---FP-NUMBER---------------DESCRIPTION-----------------UNIT PRICE-
   1    HY53-SE3F527-AA    STEERNG LOCK MOD                    WARRANTY
   1    HY53-SE19H386-AA   IGNITION SWITCH                     WARRANTY
   1    MTX-49/H8          BATTERY                             WARRANTY
                                              TOTAL - PARTS        0.00

JOB# 1 TOTALS--------------------------------------------------------

                        JOB# 1 JOURNAL PREFIX ASCS  JOB# 1 TOTAL      0.00
JOB# 2 CHARGES-------------------------------------------------------------

LABOR-------------------------------------------------------------
J# 2 7OASZRS     ROADSIDE ASSISTANCE HOURS:      TECH(S):96        WARRANTY
CLIENT STATES PLEASE FLATBED VEHICLE TO MMC SERVICE.
TRANSPORTED VEHICLE TO AND FROM MMC SERVICE AS A COURTESY
AND AT NO COST TO CLIENT. VEHICLE COMPLETED 5/23/22.

SUBLET-----PO#--------VEND INV#-INV.DATE-DESCRIPTION----------------------
   154706    1        05/11/22 FB SHAFIK TO MMC 5/10MM            WARRANTY
                                              TOTAL - SUBLET       0.00

JOB# 2 TOTALS--------------------------------------------------------

                        JOB# 2 JOURNAL PREFIX ASCS  JOB# 2 TOTAL      0.00

### Other Available Services (sidebar)

Full detail
Ceramic coating
Paint correction
Vehicle styling enhancements
Paintless dent removal
Touch up and chip removal
Lower front bumper repairs
Damaged wheel repairs
Custom wheel fabrication
Window tinting
Stereo system upgrades
Satellite radio systems
Radar detectors
Leather repair
Clear protective film
Car covers
Upholstery products
Apparel and accessories
Transport of your vehicle
anywhere in the
Continental US.

## FACTORY AUTHORIZED BODY SHOP

**DISCLAIMER OF WARRANTIES**
The only warranties, if any, applying to the part(s) and/or service are those offered by the manufacturer. The selling dealer hereby expressly disclaims all warranties, either expressed or implied, including any implied warranties of merchantability or fitness for a particular purpose, and neither assumes or authorizes any other person to assume for it any liability in connection with the sale of this part(s) and/or service. Buyer shall not be entitled to recover from the selling dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits, or income, or any other incidental damages.

PAGE 1 OF 2          CUSTOMER COPY          [CONTINUED ON NEXT PAGE]   07:42am

The Reynolds and Reynolds Company  ERAINTIVE

# MILLER MOTORCARS

186 Magee Ave. • Stamford, CT 06902
(203) 661-2555
www.millermotorcars.com

        

CELL: 201-725-0219

| CUSTOMER NO. 21243 | ADVISOR EDDIE | 68491 | TAG NO. 6514 | INVOICE DATE 06/01/22 | INVOICE NO. ASCS116281 |
|---|---|---|---|---|---|
| | LABOR RATE 229.00 | LICENSE NO. | MILEAGE 2,407 | COLOR VOLCANO RED | STOCK NO. |

FARID SHAFIK
357 ANDREWS STREET
SOUTHINGTON, CT 06489

fshafik@msn.com

| YEAR / MAKE / MODEL 19/ASTON MARTIN/DB11/2DR CPE VOLANTE | | DELIVERY DATE | DELIVERY MILES |
|---|---|---|---|
| VEHICLE I.D. NO. S C F R M F C W 7 K G M 0 6 5 1 4 | | SELLING DEALER NO. | PRODUCTION DATE |
| F.T.E. NO. | P.O. NO. | R.O. DATE 05/10/22 | |

| RESIDENCE PHONE 860-426-0969 | BUSINESS PHONE | COMMENTS | MO: 2420 |
|---|---|---|---|

```
JOB#  3 CHARGES---------------------------------------------------------
LABOR----------------------------------------------------------------
J# 3 OOASZZRPTCARD   REPORT CARD       HOURS:       TECH(S):767              0.00
            PERFORM COMPLIMENTARY REPORT CARD
            PERFORMED COMPLIMENTARY REPORT CARD

JOB#  3 TOTALS----------------------------------------------

                    JOB# 3 JOURNAL PREFIX ASCS  JOB# 3 TOTAL        0.00
JOB#  4 CHARGES---------------------------------------------------------

LABOR----------------------------------------------------------------
J# 4 57ASZ          CAMPAIGN       HOURS:  0.10 TECH(S):767         WARRANTY
     PLEASE PERFORM CAMPAIGN SA-30-1571. INSTALL HOOD FOAM.
     PERFORMED CAMPAIGN SA-30-1571. INSTALLED FOAM BLOCKS AS
     NEEDED.

PARTS------QTY---FP-NUMBER--------------DESCRIPTION-----------------UNIT PRICE-
          2    HY53-403F64-AA     NITTO FOAM                        WARRANTY
                                                  TOTAL - PARTS       0.00

JOB#  4 TOTALS----------------------------------------------

                    JOB# 4 JOURNAL PREFIX ASCS  JOB# 4 TOTAL        0.00

COMMENTS----------------------------------------------------------
DELETED OPERATION(S)----------------------------------------------
OOASZZRPTCARD   REPORT CARD

TOTALS---------------------------------------------------------
```

| OTHER AVAILABLE SERVICES |
|---|
| Full detail |
| Ceramic coating |
| Paint correction |
| Vehicle styling enhancements |
| Paintless dent removal |
| Touch up and chip removal |
| Lower front bumper repairs |
| Damaged wheel repairs |
| Custom wheel fabrication |
| Window tinting |
| Stereo system upgrades |
| Satellite radio systems |
| Radar detectors |
| Leather repair |
| Clear protective film |
| Car covers |
| Upholstery products |
| Apparel and accessories |
| Transport of your vehicle anywhere in the Continental US. |

```
*********************************************
*  [ ] CASH    [ ] CHECK   CK NO. [      ]  *
*                                           *
*  [ ] VISA    [ ] MASTERCARD   [ ] DISCOVER *
*                                           *
*  [ ] AMER XPRESS   [ ] OTHER   [ ] CHARGE  *
*                                           *
*        DATE PAID _____ CASHIER *
*********************************************

THANK YOU FOR YOUR BUSINESS!!
```

TOTAL LABOR.... 0.00
TOTAL PARTS.... 0.00
TOTAL SUBLET... 0.00
TOTAL G.O.G.... 0.00
TOTAL MISC CHG. 0.00
TOTAL MISC DISC 0.00
TOTAL TAX...... 0.00
--------
**TOTAL INVOICE $    0.00**

## FACTORY AUTHORIZED BODY SHOP

**DISCLAIMER OF WARRANTIES**
The only warranties, if any, applying to the part(s) and/or service are those offered by the manufacturer. The selling dealer hereby expressly disclaims all warranties, either expressed or implied, including any implied warranties of merchantability or fitness for a particular purpose, and neither assumes or authorizes any other person to assume for it any liability in connection with the sale of this part(s) and/or service. Buyer shall not be entitled to recover from the selling dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits, or income, or any other incidental damages.

The Reynolds and Reynolds Company  ERAINTINVE

_____
CUSTOMER SIGNATURE
*************************   D U P L I C A T E   I N V O I C E   ************************

# MILLER MOTORCARS

        

186 Magee Ave. • Stamford, CT 06902
(203) 661-2555
www.millermotorcars.com

## EXHIBIT 3C

CELL: 201-725-0219

| CUSTOMER NO. | | | ADVISOR | | TAG NO. | | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|---|---|---|---|
| 21243 | | | EDDIE | 68491 | 6514 | | 07/27/22 | ASCS117844 |

| | | LABOR RATE | LICENSE NO. | MILEAGE | COLOR | STOCK NO. |
|---|---|---|---|---|---|---|
| FARID SHAFIK | | 229.00 | | 2,950 | VOLCANO RED | |
| 357 ANDREWS STREET | | YEAR / MAKE / MODEL | | | DELIVERY DATE | DELIVERY MILES |
| SOUTHINGTON, CT 06489 | | 19/ASTON MARTIN/DB11/2DR CPE VOLANTE | | | | |
| | | VEHICLE I.D. NO. | | | SELLING DEALER NO. | PRODUCTION DATE |
| | | S C F R M F C W 7 K G M 0 6 5 1 4 | | | | |
| fshafik@msn.com | | F.T.E. NO. | | P.O. NO. | R.O. DATE | |
| | | | | | 07/13/22 | |

| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS | |
|---|---|---|---|
| 860-426-0969 | | | MO: 2963 |

JOB#  1 CHARGES----------------------------------------------------------------

LABOR----------------------------------------------------------------
J# 1 S1ASZ          BODY ELECTRICAL     HOURS:  6.75 TECH(S):767            WARRANTY
           CLIENT STATES THE AIRBAG WARNING LIGHT IS ON, THE CONTROLS
           ON THE STEERING WHEEL ARE INOPERATIVE.
           CONFIRMED CLIENTS CONCERN. SCANNED VEHICLE FOR FAULTS AND
           FOUND CODE U100888 LOGGED FOR STEERING WHEEL TO SWITCH PAD
           FAULT. REMOVED STEERING WHEEL AIRBAG, PADDLE SHIFTERS, AND
           SCCM TO INSPECT WIRING. ALL WIRING CHECKS OKAY BUT FAULT
           CODE WILL NOT CLEAR. OPENED SPOTLIGHT CASE AM-MMC-RBO-0175.
           WAS ADVISED TO CHECK FOR CORROSION AND PIN FIT AT F23
           CONNECTOR AT STEERING WHEEL ECU AND SCCM. GAINED ACCESS AND
           FOUND NO CORROSION. WAS ADVISED TO REPLACE BOTH THE SCCM AND
           STEERING WHEEL ECU F23. REPLACED BOTH PARTS AS NEEDED.
           CLEARED DTC'S AND ROAD TESTED VEHICLE. FAULTS DID NOT
           RETURN. ALL OK.

PARTS------QTY---FP-NUMBER--------------DESCRIPTION--------------------UNIT PRICE-
           1       KY53-13N064-DB    STRG CLMN SW PCK                    WARRANTY
           1       KY53-14F382-AB    STEERING WHEEL E                    WARRANTY
                                                      TOTAL - PARTS         0.00

JOB#  1 TOTALS----------------------------------------------------------------

                          JOB# 1 JOURNAL PREFIX ASCS  JOB# 1 TOTAL        0.00
JOB#  2 CHARGES----------------------------------------------------------------

LABOR----------------------------------------------------------------
J# 2 06ASZPZ12K     PROGRAM V12 KEYS   HOURS:        TECH(S):767         INTERNAL
           CLIENT STATES THE ALL BLACK KEY WILL LOCK/UNLOCK THE VEHICLE
           BUT IT WILL NOT START THE VEHICLE
           CONFIRMED CLIENTS CONCERN. TESTED AND FOUND KEY IS
           PROGRAMMED BUT NOT INITIALIZED DUE TO NEW IGNITION MODULE
           BEING INSTALLED DURING THE PREVIOUS VISIT. INSERTED KEY IN
           CUBBY BOX AND INITIALIZED KEY AS NEEDED.  TESTED AND
           CONFIRMED ALL WORKS AS DESIGNED.

JOB#  2 TOTALS----------------------------------------------------------------

                          JOB# 2 JOURNAL PREFIX ASCS  JOB# 2 TOTAL        0.00
JOB#  3 CHARGES----------------------------------------------------------------

LABOR----------------------------------------------------------------
J# 3 00ASZZRPTCARD    REPORT CARD     HOURS:       TECH(S):767          INTERNAL
           PERFORM COMPLIMENTARY REPORT CARD
           PERFORMED COMPLIMENTARY REPORT CARD. VEHICLE COMPLETED ON
           7/26/22 CLIENT NOTIFIED BY EMAIL

JOB#  3 TOTALS----------------------------------------------------------------

                          JOB# 3 JOURNAL PREFIX ASCS  JOB# 3 TOTAL        0.00
JOB#  4 CHARGES----------------------------------------------------------------

LABOR----------------------------------------------------------------

| PAGE 1 OF 2 | CUSTOMER COPY | [CONTINUED ON NEXT PAGE] | 09:24am |

---

## OTHER AVAILABLE SERVICES

Full detail

Ceramic coating

Paint correction

Vehicle styling enhancements

Paintless dent removal

Touch up and chip removal

Lower front bumper repairs

Damaged wheel repairs

Custom wheel fabrication

Window tinting

Stereo system upgrades

Satellite radio systems

Radar detectors

Leather repair

Clear protective film

Car covers

Upholstery products

Apparel and accessories

Transport of your vehicle

anywhere in the

Continental US.

## FACTORY AUTHORIZED BODY SHOP

**DISCLAIMER OF WARRANTIES**

The only warranties, if any, applying to the part(s) and/or service are those offered by the manufacturer. The selling dealer hereby expressly disclaims all warranties, either expressed or implied, including any implied warranties of merchantability or fitness for a particular purpose, and neither assumes or authorizes any other person to assume for it any liability in connection with the sale of this part(s) and/or service. Buyer shall not be entitled to recover from the selling dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits, or income, or any other incidental damages.

The Reynolds and Reynolds Company ERMINTINVE
SF2152 Q (01/18)

# MILLER MOTORCARS

186 Magee Ave. • Stamford, CT 06902
(203) 661-2555
www.millermotorcars.com

       

BENTLEY                    McLaren                                      ASTON MARTIN

CELL: 201-725-0219

| CUSTOMER NO. | ADVISOR | TAG NO. | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|
| 21243 | EDDIE       68491   6514 | | 07/27/22 | ASCS117844 |

| | LABOR RATE | LICENSE NO. | MILEAGE | COLOR | STOCK NO. |
|---|---|---|---|---|---|
| FARID SHAFIK | 229.00 | | 2,950 | VOLCANO RED | |

| | YEAR / MAKE / MODEL | | DELIVERY DATE | DELIVERY MILES |
|---|---|---|---|---|
| 357 ANDREWS STREET | 19/ASTON MARTIN/DB11/2DR CPE VOLANTE | | | |

| SOUTHINGTON, CT 06489 | VEHICLE I.D. NO. | | SELLING DEALER NO. | PRODUCTION DATE |
|---|---|---|---|---|
| | S C F R M F C W 7 K G M 0 6 5 1 4 | | | |

| | F.T.E. NO. | P.O. NO. | R.O. DATE |
|---|---|---|---|
| fshafik@msn.com | | | 07/13/22 |

| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS | |
|---|---|---|---|
| 860-426-0969 | | | MO: 2963 |

```
LABOR----------------------------------------------------------------
J# 4+4SASZ01      STEERING CONCERN     HOURS:        TECH(S):767              INTERNAL
          PLEASE CHECK FOR OPEN CAMPAIGNS.
          CHECKED AND CONFIRMED NO OPEN CAMPAIGNS AT THIS TIME.

JOB#  4 TOTALS-------------------------------------------------------

                     JOB# 4 JOURNAL PREFIX ASCS  JOB# 4 TOTAL        0.00
JOB#  5 CHARGES-----------------------------------------------------------

LABOR----------------------------------------------------------------
J# 5+52ASZO6      POWER SEATS      HOURS:        TECH(S):767              INTERNAL
          CLIENT STATES COMFORT ENTRY DOES NOT WORK.
          CHECKED AND CONFIRMED SYSTEM IS WORKING PROPERLY. COMFORT
          ENTRY ONLY MOVES THE STEERING WHEEL AND NOT THE SEAT.

JOB#  5 TOTALS-------------------------------------------------------

                     JOB# 5 JOURNAL PREFIX ASCS  JOB# 5 TOTAL        0.00
TOTALS--------------------------------------------------------------
```

```
***********************************************
*  [ ] CASH    [ ] CHECK   CK NO. [      ]  *
*                                           *
*  [ ] VISA   [ ] MASTERCARD   [ ] DISCOVER *
*                                           *
*  [ ] AMER XPRESS   [ ] OTHER   [ ] CHARGE *
*                                           *
*_____ DATE PAID _____ CASHIER *
***********************************************
```

| | |
|---|---|
| TOTAL LABOR.... | 0.00 |
| TOTAL PARTS.... | 0.00 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 0.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 0.00 |
| **TOTAL INVOICE $** | **0.00** |

THANK YOU FOR YOUR BUSINESS!!

_____
CUSTOMER SIGNATURE

## OTHER AVAILABLE SERVICES

Full detail

Ceramic coating

Paint correction

Vehicle styling enhancements

Paintless dent removal

Touch up and chip removal

Lower front bumper repairs

Damaged wheel repairs

Custom wheel fabrication

Window tinting

Stereo system upgrades

Satellite radio systems

Radar detectors

Leather repair

Clear protective film

Car covers

Upholstery products

Apparel and accessories

Transport of your vehicle

anywhere in the

Continental US.

### FACTORY AUTHORIZED BODY SHOP

**DISCLAIMER OF WARRANTIES**
The only warranties, if any, applying to the part(s) and/or service are those offered by the manufacturer. The selling dealer hereby expressly disclaims all warranties, either expressed or implied, including any implied warranties of merchantability or fitness for a particular purpose, and neither assumes or authorizes any other person to assume for it any liability in connection with the sale of this part(s) and/or service. Buyer shall not be entitled to recover from the selling dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits, or income, or any other incidental damages.

The Reynolds and Reynolds Company ERAINTINVE
SF2152 Q (01/18)

PAGE 2 OF 2          CUSTOMER COPY          [ END OF INVOICE ]   09:24am

**EXHIBIT   4**

1  DAVID N. BARRY, ESQ. (SBN 219230)
   THE BARRY LAW FIRM
2  11845 W. Olympic Blvd., Suite 1270
   Los Angeles, CA 90064
3  Telephone: 310.684.5859
   Facsimile: 310.862.4539
4
   Attorney for Plaintiff, FARID SHAFIK
5

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**07/02/2020** at 01:25:45 PM
Clerk of the Superior Court
By Marc David, Deputy Clerk

6

7

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9          **FOR THE COUNTY OF SAN DIEGO – HALL OF JUSTICE COURTHOUSE**

| | |
|---|---|
| 10  FARID SHAFIK, an individual, | Case No. 37-2020-00022856-CU-BC-CTL |
| 11 | |
| 12        Plaintiff, | **COMPLAINT FOR DAMAGES** |
| 13    v. | |
| 14 | |
| 15  ASTON MARTIN LAGONDA OF NORTH | |
| 16  AMERICA,   INC.,   A   Connecticut | |
| 17  Corporation;  and  DOES  1  through  20, | *Assigned for all purposes to the Hon. in Dept.* |
| 18  inclusive, | |
| 19        Defendants. | |

20    1.    Breach of Implied Warranty of Merchantability under the Song-Beverly Warranty Act.

21    2.    Breach of Express Warranty under the Song-Beverly Warranty Act.

22    JURY TRIAL DEMANDED.

23

24

25

26

27

28

-1-
**COMPLAINT FOR DAMAGES**

PLAINTIFF FARID SHAFIK, an individual, hereby alleges and complains as follows:

**GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

1.     Defendant, ASTON MARTIN LAGONDA OF NORTH AMERICA, INC. (hereinafter referred to as "Manufacturer"), is a corporation doing business in the County of San Diego, State of California, and, at all times relevant herein, was/is engaged in the manufacture, sale, distribution, and/or importing of ASTON MARTIN motor vehicles and related equipment.

2.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants, Does 1 through 20, inclusive, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to set forth their true names and capacities when they have ascertained them. Further, Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as a "Doe" is responsible in some manner for the events and happenings herein referred to and caused injury and damage to Plaintiff as herein alleged.

3.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants, and each of them, were the agents, servants, and/or employees of each of their Co-Defendants. Plaintiff is informed and believes, and thereon alleges, that in doing the things hereinafter alleged Defendants, and each of them, were acting in the course and scope of their employment as such agents, servants, and/or employees, and with the permission, consent, knowledge, and/or ratification of their Co-Defendants, principals, and/or employers.

4.     On or about September 1, 2019, defendants Manufacturer and Does 1 through 20 inclusive, manufactured and/or distributed into the stream of commerce a new 2019 Aston Martin DB11, VIN SCFRMFCW7KGM06514 (hereinafter referred to as the "Vehicle") for its eventual sale/purchase in the State of California.

5.     On or about October 1, 2019, Plaintiff leased, for personal, family, and/or household purposes, the new subject Vehicle from the Lessor. The lease agreement is in the possession of Defendants.

6.     The subject Vehicle was/is a "new motor vehicle" under the Song-Beverly Warranty Act.

1         7.     Along with the purchase of the Vehicle, Plaintiff received written warranties and other
2 express and implied warranties including, but not limited to, warranties from Manufacturer and
3 Seller that the Vehicle and its components would be free from all defects in material and
4 workmanship; that the Vehicle would pass without objection in the trade under the contract
5 description; that the Vehicle would be fit for the ordinary purposes for which it was intended; that
6 the Vehicle would conform to the promises and affirmations of fact made; that Defendants, and
7 each of them, would perform any repairs, alignments, adjustments, and/or replacements of any
8 parts necessary to ensure that the Vehicle was free from any defects in material and workmanship;
9 that Defendants, and each of them, would maintain the utility of the Vehicle for Three (3) years or
10 Unlimited miles and would conform the Vehicle to the applicable express warranties. (A copy of
11 the written warranty is in the possession of the Defendants).

12         8. Plaintiff has duly performed all the conditions on Plaintiff's part under the purchase
13 agreement and under the express and implied warranties given to plaintiff, except insofar as the
14 acts and/or omissions of the Defendants, and each of them, as alleged herein, prevented and/or
15 excused such performance.

16         9.     Plaintiff has delivered the Vehicle to the Manufacturer's authorized service and repair
17 facilities, agents and/or dealers, including Seller, on at least One (1) separate occasion resulting in
18 the Vehicle being out of service, for at least Thirty (30) days, by reason of repair of
19 nonconformities. Repair Orders/Invoices are in the possession of Defendants.

20         10.     By way of example, and not by way of limitation, the defects, malfunctions, mis
21 adjustments, and/or nonconformities with Plaintiff's Vehicle include the following: Plaintiff has
22 submitted the subject Vehicle for defects and malfunctions, specifically for issues with Campaign
23 01-1280 for Roof Pump, and air bag faulty warning.

24         11.     Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-
25 authorized service and repair facility, Plaintiff notified Defendants, and each of them, of the
26 defects, malfunctions, mis adjustments, and/or nonconformities existent with the Vehicle and
27 demanded that Manufacturer or its representatives repair, adjust, and/or replace any necessary parts
28 to conform the Vehicle to the applicable warranties.

1       12.     Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-

2   authorized service and repair facility, Defendants, and each of them, represented to Plaintiff that

3   they could and would conform the Vehicle to the applicable warranties, that in fact they did

4   conform the Vehicle to said warranties, and that all the defects, malfunctions, mis adjustments,

5   and/or nonconformities have been repaired; however, Manufacturer or its representatives failed to

6   conform the Vehicle to the applicable warranties because said defects, malfunctions, mis

7   adjustments, and/or nonconformities continue to exist even after a reasonable number of attempts

8   to repair was given.

9       13.     The amount in controversy exceeds TWENTY-FIVE THOUSAND DOLLARS

10  ($25,000.00), exclusive of interest and costs, for which Plaintiff seeks judgment against

11  Defendants, together with equitable relief. In addition, Plaintiff seeks damages from Defendants,

12  and each of them, for incidental, consequential, exemplary, and actual damages including interest,

13  costs, and actual attorneys' fees.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

-4-
**COMPLAINT FOR DAMAGES**

1

## FIRST CAUSE OF ACTION

2

## Breach of Implied Warranty of Merchantability under Song-Beverly Warranty Act

3

### Against all Defendants

4      14.   Plaintiff realleges each and every paragraph (1-13) and incorporates them by this

5  reference as though fully set forth herein.

6      15.   The distribution and sale of the Vehicle was accompanied by the Manufacturer

7  implied warranty that the Vehicle was merchantable.

8      16.   Furthermore, Defendants, and each of them, impliedly warranted, inter alia, that the

9  Vehicle would pass without objection in the trade under the contract description; that the Vehicle

10  was fit for the ordinary purposes for which it was intended; that the Vehicle was adequately

11  assembled; and/or that the Vehicle conformed to the promises or affirmations of fact made to

12  Plaintiff.

13      17.   As evidenced by the defects, malfunctions, mis adjustments, and/or nonconformities

14  alleged herein, the Vehicle was not merchantable because it did not have the quality that a buyer

15  would reasonably expect, because it could not pass without objection in the trade under the contract

16  description; because it was not fit for the ordinary purposes for which it was intended; because it

17  was not adequately assembled; and/or because it did not or could not be conformed to the promises

18  or affirmations of fact made to Plaintiff.

19      18.   Upon discovery of the Vehicle's nonconformities, Plaintiff took reasonable steps to

20  notify Defendants, and each of them, within a reasonable time that the Vehicle did not have the

21  quality that a buyer would reasonably expect and, further, justifiably revoked acceptance of the

22  nonconforming Vehicle.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

-5-

**COMPLAINT FOR DAMAGES**

1      19.    Plaintiff hereby gives written notice and justifiably revokes acceptance of the

2 nonconforming Vehicle under the Commercial Code sections 2607 and 2608. Plaintiff further

3 demands that the Manufacturer cancel the sale, take back the nonconforming Vehicle, refund all

4 the money expended, pay the difference between the value of the Vehicle as accepted and the value

5 the Vehicle would have had if it had been as warranted, and/or pay damages under the Commercial

6 Code sections 2711, 2714, and 2715. Defendants, and each of them, have, however, refused to

7 comply.

8      20.    Plaintiff hereby gives written notice and makes demand upon Manufacturer for

9 replacement or restitution, pursuant to Song-Beverly. Defendants, and each of them, knew of their

10 obligations under Song-Beverly; however, despite Plaintiff's demand, Defendants and each of

11 them, have intentionally failed and refused to make restitution or replacement pursuant to Song-

12 Beverly.

13      21.    As a result of the acts and/or omissions of the Defendants, and each of them, Plaintiff

14 has sustained damage in the amount actually paid or payable under the contract, plus prejudgment

15 interest thereon at the legal rate. Plaintiff will seek leave to amend this Complaint to set forth the

16 exact amount thereof when that amount is ascertained.

17      22.    As a further result of the actions of Defendants, and each of them, Plaintiff has

18 sustained incidental and consequential damages in an amount yet to be determined, plus interest

19 thereon at the legal rate. Plaintiff will seek leave to amend this Complaint to set forth the exact

20 amount of incidental damages when that amount is ascertained.

21      23.    As a further result of the actions of Defendants, and each of them, Plaintiff has

22 sustained damages equal to the difference between the value of the Vehicle as accepted and the

23 value the Vehicle would have had if it had been as warranted.

24      24.    As a direct result of the acts and/or omissions of Defendants, and each of them, and

25 in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to

26 Song-Beverly, Plaintiff, in addition to his other remedies, is entitled to the recovery of his

27 attorneys' fees based upon actual time expended and reasonably incurred, in connection with the

28 commencement and prosecution of this action.

1

## SECOND CAUSE OF ACTION

2

### Breach of Express Warranty under Song-Beverly Warranty Act

3

#### Against all Defendants

4      25.    Plaintiff realleges each and every paragraph (1-24) and incorporates them by this

5  reference as though fully set forth herein.

6      26.    The Vehicle had defects, malfunctions, mis adjustments, and/or nonconformities

7  covered by the warranty that substantially impaired its value, use, or safety to Plaintiff.

8      27.    Plaintiff delivered the Vehicle to Manufacturer or its authorized repair facilities for

9  repair.

10     28.    Defendants, and each of them, failed to service or repair the Vehicle to match the

11  written warranty after a reasonable number of opportunities to do so.

12     29.    The acts and/or omissions of Defendants, and each of them, in failing to perform the

13  proper repairs, part replacements, and/or adjustments, to conform the Vehicle to the applicable

14  express warranties constitute a breach of the express warranties that the Manufacturer provided to

15  Plaintiff, thereby breaching Defendants' obligations under Song-Beverly.

16     30.    Defendants, and each of them, failed to perform the necessary repairs and/or service

17  in good and workmanlike manner. The actions taken by Defendants, and each of them, were

18  insufficient to make the Subject Vehicle conform to the express warranties and/or proper

19  operational characteristics of like Vehicles, all in violation of Defendants' obligations under Song-

20  Beverly.

21     31.    Plaintiff hereby gives written notice and makes demand upon Manufacturer for

22  replacement or restitution, pursuant to Song-Beverly. Defendants and each of them, knowing their

23  obligations under Song-Beverly, and despite Plaintiff's demand, failed and refused to make

24  restitution or replacement according to the mandates of Song-Beverly. The failure of Defendants,

25  and each of them, to refund the price paid and payable or to replace the Vehicle was intentional and

26  justifies an award of a Civil Penalty in an amount not to exceed two times Plaintiff's actual

27  damages.

28  ///

-7-
### COMPLAINT FOR DAMAGES

1      32.    As a result of the acts and/or omissions of Defendants, and each of them, and

2  pursuant to the provisions of the Song-Beverly, Plaintiff is entitled to replacement of the Vehicle or

3  restitution of the amount actually paid or payable under the contract, at Plaintiff's election, plus

4  prejudgment interest thereon at the legal rate. Plaintiff will seek leave of Court to amend this

5  Complaint to set forth the exact amount of restitution and interest, upon election, when that amount

6  has been ascertained.

7      33.    Additionally, as a result of the acts and/or omissions of Defendants, and each of

8  them, and pursuant to Song-Beverly, Plaintiff has sustained and is entitled to consequential and

9  incidental damages in amounts yet to be determined, plus interest thereon at the legal rate. Plaintiff

10  will seek leave of the court to amend this complaint to set forth the exact amount of consequential

11  and/or incidental damages, when those amounts have been ascertained.

12      34.    As a direct result of the acts and/or omissions of Defendants, and each of them, and

13  in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to

14  Song-Beverly, Plaintiff, in addition to other remedies, is entitled to the recovery of his attorneys'

15  fees based upon actual time expended and reasonably incurred, in connection with the

16  commencement and prosecution of this action.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**COMPLAINT FOR DAMAGES**

1
**PRAYER FOR RELIEF**

2       WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as

3  follows:

4           A. For replacement or restitution, at Plaintiff's election, according to proof;

5           B. For incidental damages, according to proof;

6           C. For consequential damages, according to proof;

7           D. For a civil penalty as provided in Song-Beverly, in an amount not to exceed two

8               times the amount of Plaintiff's actual damages;

9           E. For actual attorney's fees, reasonably incurred;

10          F. For costs of suit and expenses, according to proof;

11          G. For the difference between the value of the Vehicle as accepted and the value the

12              Vehicle would have had if it had been as warranted;

13          H. For remedies provided in Chapters 6 and 7 of Division 2 of the Commercial Code;

14          I. For pre-judgment interest at the legal rate;

15          J. Such other relief the Court deems appropriate.

16

17  Date:   June 25, 2020                    THE BARRY LAW FIRM

18

19                                       By:

20                                          DAVID N. BARRY, ESQ.
                                            Attorney for Plaintiff,
21                                          FARID SHAFIK

22

23

24

25

26

27

28

-9-
**COMPLAINT FOR DAMAGES**

# **EXHIBIT   5**

<table>
<tr><td>1</td><td>LEHRMAN LAW GROUP<br>KATE S. LEHRMAN [Bar No. 123050]</td><td><b>ELECTRONICALLY FILED</b><br>Superior Court of California,<br>County of San Diego</td></tr>
<tr><td>2</td><td>BENSON Y. DOUGLAS [Bar No. 206742]<br>ERIN TALLENT [Bar No. 274813]</td><td><b>06/11/2021</b> at 11:04:00 AM</td></tr>
<tr><td>3</td><td>12121 Wilshire Boulevard</td><td>Clerk of the Superior Court<br>By Kristin Sorianosos,Deputy Clerk</td></tr>
<tr><td>4</td><td>Suite 1300<br>Los Angeles, CA  90025</td><td></td></tr>
<tr><td>5</td><td>(310) 917-4500</td><td></td></tr>
<tr><td>6</td><td>(310) 917-5677 (FAX)</td><td></td></tr>
</table>

7  Attorneys for Defendant
   ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.

8

9                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                              COUNTY OF SAN DIEGO

<table>
<tr><td>11</td><td>FARID SHAFIK, an individual,</td><td>)</td><td>Case No. 37-2020-00022856-CU-BC-CTL</td></tr>
<tr><td>12</td><td rowspan="2">Plaintiff,</td><td>)<br>)</td><td>[Filed:  July 2, 2020]</td></tr>
<tr><td>13</td><td>)<br>)</td><td>Hon. Gregory W. Pollock</td></tr>
<tr><td>14</td><td>v.</td><td>)<br>)</td><td>Dept. C-71</td></tr>
<tr><td>15</td><td>ASTON MARTIN LAGONDA OF NORTH<br>AMERICA, INC., a Connecticut Corporation;</td><td>)<br>)</td><td><b>DEFENDANT ASTON MARTIN<br>LAGONDA OF NORTH AMERICA,</b></td></tr>
<tr><td>16</td><td>and DOES 1 through 20, inclusive,</td><td>)<br>)</td><td><b>INC.'S MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF</b></td></tr>
<tr><td>17</td><td rowspan="2">Defendants.</td><td>)<br>)</td><td><b>MOTION FOR SUMMARY JUDGMENT</b></td></tr>
<tr><td>18</td><td>)<br>)</td><td><b>OR, IN THE ALTERNATIVE, SUMMARY<br>ADJUDICATION OF ISSUES</b></td></tr>
<tr><td>19</td><td></td><td>)<br>)</td><td><i>[filed concurrently with Notice of Motion;</i></td></tr>
<tr><td>20</td><td></td><td>)<br>)</td><td><i>Declaration of Erin Tallent; Evidence ISO<br>Motion; Separate Statement and Proposed</i></td></tr>
<tr><td>21</td><td></td><td>)<br>)</td><td><i>Order]</i></td></tr>
<tr><td>22</td><td></td><td>)<br>)</td><td></td></tr>
<tr><td>23</td><td></td><td>)<br>)</td><td>DATE:         November 5, 2021<br>TIME:         9:30 a.m.</td></tr>
<tr><td>24</td><td></td><td></td><td>Dept.          C-71</td></tr>
</table>

25          Defendant Aston Martin Lagonda of North America, Inc. (AMLNA or defendant)

26  respectfully submits the following Memorandum Of Points And Authorities In Support Of Its

27  Motion For Summary Judgment Or Summary Adjudication Of Issues:

28

700.044.ET - 00602438.DOC                      1                37-2020-00022856-CU-BC-CTL

**DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## INTRODUCTION AND SUMMARY OF RELEVANT FACTS

4          Plaintiff's only two causes of action are for breach of the implied warranty of

5     merchantability and breach of express warranty under the Song-Beverly Consumer Warranty

6     Act. [UF1]

7          Plaintiff Farid Shafik is a resident of and is employed in the State of Connecticut. [UF 2,

8     12, 22] On October 1, 2019, Dr. Shafik leased the 2019 Aston Martin DB11 that is the subject of

9     this action from Aston Martin San Diego. [UF 3, 13, 23]

10          Dr. Shafik decided to lease the vehicle from Aston Martin San Diego by searching on the

11    internet. [UF 4, 14, 24] Dr. Shafik leased the vehicle with the understanding that it would be

12    delivered to him in Connecticut. [UF 5, 15, 25] Dr. Shafik negotiated the lease of the vehicle

13    from Connecticut. At no point during the process was he in California. [UF 6, 16, 26] The

14    dealership delivered the paperwork to Dr. Shafik in Connecticut by FedEx and he signed and

15    returned it. [UF 7, 17, 27] One of the documents the dealership delivered and Dr. Shafik signed

16    was a "Due Bill" which stated, "Transportation." Dr. Shafik understood this to mean the vehicle

17    would be delivered to his house with the cost included in the lease. [UF 8, 18, 28] The vehicle

18    was delivered to Dr. Shafik in Connecticut and he took possession of it on October 12, 2019.

19    [UF 9, 19, 29] Dr. Shafik received the registration and Connecticut license plates during the first

20    week of December 2019. [UF 10, 20, 30]

21          Plaintiff's first cause of action is for breach of the implied warranty of merchantability

22    under the Song-Beverly Consumer Warranty Act. [UF 11] Plaintiff's second cause of action is

23    for breach of express warranty under Song-Beverly. [UF 21]

24          On May 6, 2020, Dr. Shafik took the vehicle to Miller Motorcars in Stamford,

25    Connecticut with a complaint that the airbag fault light was on. [UF 31] The vehicle has not been

26    taken anywhere else, other than Miller Motorcars, for maintenance, service, or repair. [UF 32]

27          Neither of plaintiff's Song-Beverly causes of action has merit. Song-Beverly only applies

28

700.044.ET - 00602438.DOC                                   2                          37-2020-00022856-CU-BC-CTL

**DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.'S MEMORANDUM OF**
**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE**
**ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

1  to vehicles sold or leased in California and plaintiff leased his vehicle in Connecticut. Plaintiff's

2  first cause of action for breach of the implied warranty of merchantability is without merit

3  because the implied warranty only applies to "consumer goods that are sold at retail in this state"

4  and plaintiff leased his vehicle in Connecticut. Plaintiff's second cause of action for breach of

5  express warranty is without merit because plaintiff leased his vehicle in Connecticut and only

6  presented his vehicle for service or repair on one occasion in Connecticut.

7       AMLNA is entitled to summary judgment.

8                                          **II.**

9              **STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

10      Code of Civil Procedure section 437c, subdivision (a) allows that any party may move for

11  summary judgment in any action or proceeding if it is contented that the action has no merit. A

12  cause of action has no merit if 1) one or more of the elements cannot be separately established;

13  or 2) a defendant establishes an affirmative defense to that cause of action. (Code Civ. Proc.,

14  § 437c, subd. (o).)  Further, a Motion for summary adjudication may be brought as to one or

15  more causes of action, or one or more claims for damages on the same grounds as summary

16  judgment. (Code Civ. Proc., § 437c, subd. (f).)  A summary adjudication Motion is subject to the

17  same rules and procedures as a summary judgment Motion.  (*Lunardi v. Great-West Life*

18  *Assurance Co.* (1995) 37 Cal.App.4th 807, 819).

19      A defendant need not "conclusively negate" all the elements of a plaintiff's claim.

20  (*Aguilar v. Atlantic Richfield Co.,* (2001) 25 Cal.4th 826, 853.)  Instead, a defendant need

21  produce only direct or circumstantial evidence that plaintiff does not have and cannot reasonably

22  expect to obtain a prima facie case. (*Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 186.)

23  Once the defendant has met this burden, the burden shifts to the plaintiff to show that one or

24  more issues of material fact exist; the plaintiff cannot rely upon the mere allegations or denials in

25  his or her pleadings.  (Code Civ. Proc., §437c, subd. (o)(2).) The matter to be determined by the

26  trial Court is whether the plaintiff has presented any facts which give rise to a triable issue.

27  (*Stationers Corp. v. Dun & Bradstreet, Inc.*) (1965) 62 Cal.2d 412, 417.) The Court has no

28

700.044.ET - 00602438.DOC          3          37-2020-00022856-CU-BC-CTL

**DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

1   discretion to refuse summary judgment where the evidence before it discloses no triable issue as

2   to any material fact and that the moving party is entitled to judgment as a matter of law. (See

3   *Krasely v. Superior Court* (1981) 101 Cal.App.3d 425, 432.)

4                                                          **III.**

5   **PLAINTIFF'S CAUSES OF ACTION ARE WITHOUT MERIT BECAUSE SONG-**

6   **BEVERLY ONLY APPLIES TO VEHICLES SOLD OR LEASED IN CALIFORNIA AND**

7   **PLAINTIFF LEASED HIS VEHICLE IN CONNECTICUT**

8         Song-Beverly Act is expressly limited to goods sold or leased in California. (See Civ.

9   Code, §§ 1792, 1792.1, 1792.2, 1793.3, 1793.6.)

10        Under Civil Code section 1795.4, subdivision (b), a lessee has the same rights as he

11  would have had if he had purchased the goods. "[F]or the Song-Beverly Act to apply, the subject

12  vehicle must at least have been bought or leased in California." (*Park City Services, Inc. v. Ford*

13  *Motor Co., Inc.* (2006) 144 Cal.App.4th 295, 308.)

14        Song-Beverly defines a "sale" as "(1) the passing of title from the seller to the buyer for a

15  price, or (2) a consignment for sale." (Civ. Code, § 1791, subd. (n).) California law is clear that

16  when title passes outside of California, the Song-Beverly Act does not apply. (See *Cummins, Inc.*

17  *v. Superior Court* (2005) 36 Cal.4th 478, 493.) Thus, the dispositive issue in this case is whether

18  title passed in California or Connecticut.

19        California Uniform Commercial Code section 2401, subdivision (2) provides:

20              (2)      Unless otherwise explicitly agreed title passes to the buyer at the

21        time and place at which the seller completes his performance with reference to the

22        physical delivery of the goods, despite any reservation of a security interest and

23        even though a document of title is to be delivered at a different time or place; and

24        in particular and despite any reservation of a security interest by the bill of lading

25              (a)      If the contract requires or authorizes the seller to send the

26        goods to the buyer but does not require him to deliver them at destination, title

27        passes to the buyer at the time and place of shipment; but

28

700.044.ET - 00602438.DOC                          4                    37-2020-00022856-CU-BC-CTL

**DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.'S MEMORANDUM OF**
**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE**
**ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

1        (b)      If the contract requires delivery at destination, title passes on

2    tender there.

3        In this case, title passed in Connecticut, not California, because that is where the dealer

4    "complete[d] his performance with reference to the physical delivery of the goods." The "Due

5    Bill" required the vehicle to be delivered in Connecticut. [UF 8, 18, 28] The vehicle was

6    delivered to Dr. Shafik in Connecticut and he took possession of it on October 12, 2019. [UF 9,

7    19, 29] Dr. Shafik received the registration and Connecticut license plates during the first week

8    of December 2019. [UF 10, 20, 30]

9        Since plaintiff leased his vehicle in Connecticut rather than California, Song-Beverly

10   does not apply and AMLNA is entitled to judgment as a matter of law.

11                                          **IV.**

12   **PLAINTIFF'S FIRST CAUSE OF ACTION FOR BREACH OF THE IMPLIED**

13   **WARRANTY OF MERCHANTABILITY IS WITHOUT MERIT BECAUSE PLAINTIFF**

14                  **LEASED HIS VEHICLE IN CONNECTICUT**

15       Civil Code section 1792 provides in pertinent part as follows: "Unless disclaimed in the

16   manner prescribed by this chapter, *every sale of consumer goods that are sold at retail in this*

17   *state* shall be accompanied by the manufacturer's and the retail seller's implied warranty that the

18   goods are merchantable." (Emphasis added.)

19       Since plaintiff leased his vehicle in Connecticut rather than California, he does not have a

20   cause of action for breach of the implied warranty under Song-Beverly. The implied warranty

21   only arises with respect to "consumer goods that are sold at retail in this state."

22       AMLNA is entitled to summary adjudication of plaintiff's first cause of action for breach

23   of the implied warranty.

24   ///

25   ///

26   ///

27   ///

28
**DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

1

**V.**

2

**PLAINTIFF'S SECOND CAUSE OF ACTION FOR BREACH OF EXPRESS**

3

**WARRANTY IS WITHOUT MERIT BECAUSE PLAINTIFF LEASED HIS VEHICLE**

4

**IN CONNECTICUT AND ONLY PRESENTED HIS VEHICLE FOR SERVICE OR**

5

**REPAIR ON ONE OCCASION IN CONNECTICUT**

6    The obligations of a manufacturer who makes express warranties, including the

7  obligation to make restitution or replace a vehicle, are limited to vehicles that are "sold in this

8  state." (See Civ. Code, § 1793.2, subd. (a) ["Every manufacturer of consumer goods sold in this

9  state and for which the manufacturer has made an express warranty shall:"].) Since plaintiff

10  leased his vehicle in Connecticut rather than California, he does not have a cause of action for

11  breach of express warranty under Song-Beverly.

12    Further, in order to establish an express warranty claim under Song-Beverly, plaintiff

13  must prove that the nonconformity covered by the express warranty that substantially impaired

14  the use, value or safety of the vehicle was not repaired within a reasonable number of attempts.

15  (Civ. Code, § 1793.2; *Ibrahim v. Ford Motor Co.*, (1989) 214 Cal.App.3d 878, 886-887; *Oregel*

16  *v. American Isuzu Motors, Inc.*, (2001) 90 Cal.App.4th 1094, 1101.)

17    In this regard, Civil Code section 1793.2, subdivision (d)(2)(B) states in pertinent part as

18  follows:

19    "… If the manufacturer or its representative *in this state* is unable service or repair
a new motor vehicle … to conform to the applicable express warranties after a
reasonable number of *attempts*, the manufacturer shall promptly … make

20    restitution to the buyer …." [Emphasis added].

21    Here, even if plaintiff had leased his vehicle in California, AMLNA would not be

22  obligated to repurchase it because plaintiff only presented his vehicle for repair on one occasion,

23  in Connecticut. The vehicle was never presented to an authorized repair facility in California due

24  to a complaint. Regardless of the location of the repair, there is no obligation to repurchase a

25  vehicle where, as here, it has only been presented for repair on one occasion. (See *Silvio v. Ford*

26  *Motor Company* (2003) 109 Cal.App.4th 1205, 1208-1209 (*Silvio*) [minimum of two attempts to

27  repair a defect required to establish a "reasonable number of repair attempts"]).

28

700.044.ET - 00602438.DOC                           6                    37-2020-00022856-CU-BC-CTL

**DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.'S MEMORANDUM OF**
**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE**
**ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

1        In *Silvio*, plaintiffs presented their Ford Explorer vehicle to an authorized dealer for

2    repair on one occasion after the vehicle suddenly and rapidly accelerated. (*Id*. at 1207.) Plaintiffs

3    were allegedly informed that their vehicle had no issues, but later experienced another episode of

4    sudden acceleration. (*Id*.) Thereafter, plaintiffs requested a buyback of the vehicle but were

5    refused, and subsequently filed suit against Ford. (*Id*.) The Court of Appeal found that one

6    instance of presenting the vehicle to Ford was not sufficient for a cause of action under Civil

7    Code section 1793.2, subdivision (d), as Civil Code section 1793.2, subdivision (d) required a

8    manufacturer or its representative buyback the vehicle only if it fails to repair the vehicle after a

9    "reasonable number of attempts." (*Id*. at 1208-1209.) The Court of Appeal noted that because

10   "attempts" is in the plural, this means a single instance of presenting the vehicle was not

11   sufficient for purposes of this statute. (*Id*.)

12       In this case, Dr. Shafik took the vehicle to Miller Motorcars in Stamford, Connecticut on

13   May 6, 2020, with a complaint that the airbag fault light was on. [UF 31] The vehicle has not

14   been taken anywhere else, for maintenance, service, or repair. [UF 32]

15       AMLNA is therefore entitled to summary adjudication of plaintiff's second cause of

16   action.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

700.044.ET - 00602438.DOC        7        37-2020-00022856-CU-BC-CTL

**DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

# VI.

## CONCLUSION

For the foregoing reasons, as well as for such other and further reasons as may be adduced in a Reply Memorandum and upon the hearing of this Motion, AMLNA respectfully prays that the Court enter summary judgment in its favor.  In the alternative, AMLNA respectfully requests that the Court grant summary adjudication as to plaintiff's First and Second Causes of Action.

DATED:  June 11, 2021                    LEHRMAN LAW GROUP
                                         KATE S.  LEHRMAN
                                         BENSON Y. DOUGLAS
                                         ERIN TALLENT

                              By:        /s/ Erin Tallent
                                         Erin Tallent
                                         Attorneys for Defendant
                                         ASTON MARTIN LAGONDA OF NORTH
                                         AMERICA, INC.

**DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

1

## PROOF OF SERVICE

2

3   STATE OF CALIFORNIA        )
                               ) ss.
4   COUNTY OF LOS ANGELES      )

5

6        I am employed in the County of Los Angeles, State of California.  I am over the age of 18
    and not a party to the within action; my business address is 12121 Wilshire Blvd., Suite 1300,
7   Los Angeles, CA 90025.

8        On June 11, 2021, I served, in the manner indicated below, the foregoing document
    described as as:  **DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA,**
9   **INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**
    **FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY**
10  **ADJUDICATION OF ISSUES** on the interested parties in this action by placing true copies
    thereof, enclosed in sealed envelopes, at Los Angeles, CA addressed as follows:
11

12                            **SEE ATTACHED SERVICE LIST**

13  []   BY OVERNIGHT DELIVERY:  I caused such envelopes to be delivered by Golden State
         Overnight air courier, with next day service, to the offices of the addressees. (C.C.P. §1013(c)(d).)

14
    []   BY FACSIMILE:  (C.C.P. § 1013(e)(f).)
15
    []   **BY MAIL**: I caused to be delivered by U.S. mail by placing a true copy thereof enclosed in sealed
16       envelopes addressed as stated above.  I am "readily familiar" with the firm's practice of collection
         and processing documents for mailing. Under that practice it would be deposited with the U.S.
17       postal service on that same day with postage thereon fully prepaid in the ordinary course of
         business.
18
    []   BY PERSONAL SERVICE:  I caused such envelopes to be delivered by hand to the offices of the
19       addressees.  (C.C.P. § 1011(a)(b).)

20  [X]  **BY ELECTRONIC MAIL**:  I transmitted such document from Los Angeles, California, to the
         electronic mail address maintained by the person(s) on the SERVICE LIST as last indicated by that
21       person on a document that he or she has filed in the above-entitled cause and served on this party.
         C.C.P. §1010.6 (a)(6).)
22

23       I declare under penalty of perjury under the laws of the State of California that the above
    is true and correct.
24

25       Executed on June 11, 2021, at Los Angeles, California.

26                            /s/ *Sonja Robertson*
                              Sonja Robertson
27

28  700.044.ET - 00602438.DOC                  9          37-2020-00022856-CU-BC-CTL
    **DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.'S MEMORANDUM OF**
    **POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE**
    **ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

1

**PROOF OF SERVICE LIST**
**ASTON MARTIN LAGONDA LIMITED/SHAFIK, FARID**

2

**(A096-044)(700.044)**

3

**Case No. 37-2020-00022856-CU-BC-CTL**
**Page 1**

4

5

6 David N. Barry, Esq.     Attorneys for Plaintiff
  Otis Hayes III, Esq.     FARID SHAFIK

7 THE BARRY LAW FIRM
  11845 West Olympic Boulevard

8 Suite 1270
  Los Angeles, CA  90064

9 (310) 684-5859

10 (310) 862-4539 (FAX)
  dbarry@mylemonrights.com

11 ohayes@mylemonrights.com
  jtemplin@mylemonrights.com

12 ahernandez@mylemonrights.com

13 vsalazar@mylemonrights.com
  vwalls@mylemonrights.com

14 eserviceastonmartin@mylemonrights.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.'S MEMORANDUM OF**
**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE**
**ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO
CENTRAL**

# EXHIBIT   6

### MINUTE ORDER

DATE: 11/05/2021                    TIME: 09:30:00 AM        DEPT: C-71

JUDICIAL OFFICER PRESIDING: Gregory W Pollack
CLERK: Terry Abas
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT: M. Montalbano

CASE NO: **37-2020-00022856-CU-BC-CTL**  CASE INIT.DATE: 07/02/2020
CASE TITLE: **Shafik vs Aston Martin Lagonda of North America Inc [IMAGED]**
CASE CATEGORY: Civil - Unlimited       CASE TYPE: Breach of Contract/Warranty

---

**EVENT TYPE**: Summary Judgment / Summary Adjudication (Civil)
MOVING PARTY: Aston Martin Lagonda oF North America Inc
CAUSAL DOCUMENT/DATE FILED: Motion for Summary Judgment and/or Adjudication, 06/11/2021

---

**APPEARANCES**

Erin Tallent, counsel, present for Defendant(s) via remote video conference.

---

This is defendant Aston Martin Lagonda of North America, Inc.'s ("Aston") **unopposed** motion for summary judgment, or in the alternative, a motion for summary adjudication of each of the two causes of action pleaded within the complaint of plaintiff Farid Shafik ("Shafik"). The complete and total lack of written opposition by Shafik necessarily includes a failure to comply with the requirement of a separate statement. "Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." CCP §437(c)(b)(3); *Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 576. In addition to not filing a written opposition, neither Shafik nor his counsel appeared at today's hearing.

Furthermore, the absence of opposition by Shafik may be deemed an appellate waiver. *Bell v. American Title Insurance Co.* (1991) 226 Cal.App.3d 1589, 1602 ("Besides filing no timely opposition to the motion, appellants failed to appear at the hearing, either to contest the opt-out issue or to argue that the court should consider their untimely written opposition. Ticor's motion to preclude opt-outs was thus unopposed. ... Having failed to effectively oppose Ticor's motion in the trial court, appellants have thus waived any objections to the resulting order precluding opt outs from the Ticor settlements."). Moreover, "[i]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830.

In spite of Shafik's failure to provide any written opposition, including the required separate statement response, the court has reviewed Aston's papers and is satisfied that Aston has established a prima facie showing for summary judgment. *i.e.,* defendant has met its burden of persuasion that there is no triable issue of material fact and that defendant is entitled to judgment as a matter of law.

Accordingly, the court grants Aston's motion for summary judgment.

*R.C.Pollack*

_____

Judge Gregory W Pollack

LEMBERG █ LAW                                    **EXHIBIT   7**

### LET'S GET YOUR CASE STARTED!

Here's a summary of how we do business.

- We'll **NEVER** send you a bill
- We only get paid **WHEN WE WIN** or **SETTLE** your case
- The ways we get paid:
  - Debt harassment cases: debt collection agency or bank pays our fees because they broke the law
  - Robocall cases: we deduct 40% of the amount recovered
  - Lemon Law: we deduct 1/3 of cash settlements or receive fees from manufacturer

Scroll down to read the entire agreement.

**1. Scope.** By this request, Farid Shafik ("Client"), residing in 357 Andrews Street Southington, Connecticut 06489 asks Lemberg Law LLC, based in Wilton, Connecticut ("Attorneys") to represent client in Client's potential case. If Attorneys decide the claim has merit, Attorneys will notify the Client in writing of their agreement to pursue the matter under the terms of this written Agreement. If Client retains the firm on other similar cases, they will be handled on the same terms as this agreement.

**2. Rejection of Hourly Option.** Client is informed that contingency representation is not the only way to hire a lawyer, and that Client has the right to hire a lawyer for the Client's case on an hourly fee basis but elects not to do so. Contingency fees are not set by law and may be negotiated between Attorneys and Client.

**3. No Fees Unless We Win — Contingency Representation.** We charge you **NO FEES UPFRONT** and will only be paid from money that comes from the defendant, and only if we are successful in prosecuting your case on your behalf. If nothing is recovered, you will not be charged legal fees. How are fees are calculated depends on your case:

**Debt Harassment Cases** Settlement proceeds will be disbursed as follows: Client will receive (i) FDCPA recovery up to $1,000.00 and/or reduction of the debt, and (ii) documented state law damages, if any. Attorneys will receive attorney's fees paid by collectors and costs and expenses of representation advanced on client's behalf. The defense of debt collection lawsuits is not part of this request.

**TCPA/Robocall Cases**. These cases are inherently risky, frequently requiring extended travel, expense and expert travel and expert testimony. Because of the risk involved, legal fees to be received from settlements in these cases will be calculated as follows: 40% of the gross amount recovered on Client's behalf from any settlement (which may include reduction of the debt), net of costs and expenses advanced, plus any legal fees and costs allowable by other laws. Attorneys make no promises about the exact amount of attorney's fees to be incurred by Client under this Agreement. Client is not liable to pay Attorney attorney's fees for legal work performed on TCPA cases otherwise than from amounts recovered on Client's behalf by Attorney.

**Car (Breach of Warranty and Lemon Law) Cases** Except as specified in Paragraphs 5 and 10, if nothing is recovered, you will not be charged legal fees. The amount of fees depends on the type of settlement you're ultimately offered and chose to accept. Your case could settle in one of the following ways:

A. Option A - CASH SETTLEMENTS. (No fee unless we win). Sometimes manufacturers agree to pay CASH to settle our clients' claims. In negotiations, you hereby instruct us to negotiate our legal fees separately so that you don't have to pay any fees or costs out of the settlement. However, if we're unable to do so, here's the fee breakdown: • If Settlement Amount is $2000 and UNDER, Fees are 40% plus costs • If Settlement Amount is $2000 and ABOVE, Fees are 33.33% plus costs If a case has been filed in court our fees, unless negotiated separately, will the greater of (A) the amounts indicated above, or (B) value of time spent representing you billed at our normal rates. We'll keep track of the time spent on your case. This contingency fee arrangement is in preference to paying attorney's fees on an hourly basis.

B. Option B* – REPURCHASE – LEMON LAW CASES ONLY. (No fee unless we win). If your vehicle is 'repurchased' by the manufacturer, we are sometimes able to force the manufacturer not only to pay off the existing loan on the vehicle, but also to refund some of the money you have already paid for the car (less a statutory deduction for mileage), including monthly payments, taxes and other incidental expenses, in addition to attorney's fees. In this event, our contingency compensation will be calculated as follows: LEGAL FEES PAID BY MANUFACTURER + 25% of any funds recovered above vehicle pay off. If there is no recovery, YOU WILL OWE US NOTHING for services rendered.

C. Option C* — REPLACEMENT – LEMON LAW CASES ONLY. (No fee. Period). You pay no fees out-of-pocket, and here's why. The Lemon Law in your state provide that, upon successful resolution of LEMON LAW disputes, defendants (the vehicle manufacturer or dealer) may be ordered to pay the reasonable attorneys' fees of consumers like you. Therefore, if we obtain a replacement vehicle for you, our fees will be paid by the manufacturer. If there is no recovery, YOU WILL OWE US NOTHING for services rendered. * Option B and Option C contingency representation is not available in the following states: Florida, Illinois, North Carolina, Texas. However, Lemberg Law will attempt to achieve repurchase or replacement in the course of pre-arbitration and pre-suit negotiations. Lemberg Law will represent Client in these States on contingency pursuant to Option A

**Fair Credit Reporting And Faulty Background Check Cases.** Settlement proceeds will be disbursed as follows: Client will receive (i) FCRA recovery up to $1,000.00, and (ii) documented state law damages, if any. Attorneys will receive attorney's fees paid by credit reporting agencies and costs and expenses of representation advanced on client's behalf. Cases alleging inaccuracies on background check reports are inherently risky, frequently requiring extended travel, expense and expert travel and expert testimony. Because of the risk involved, unless legal fees are negotiated separately, legal fees to be received from settlements in these cases will be calculated as follows:

40% (forty percent) of the gross proceeds of recovery, whether by settlement, judgment or otherwise. The Client will not have to pay attorneys' fees if the Client does not prevail, recover money or settle the case. The Client also has been advised that the Client cannot waive, or in any way default the Attorneys' claim for attorneys' fees and costs, and that the Client has assigned and transferred to the Attorneys, the right to recover attorneys' fees and costs that the Client may have.

In the event the Attorneys recover attorneys' fees, or are awarded attorneys' fees, the attorney's fees recovered shall be applied against the amounts the Attorneys would be entitled to under this Agreement. In the event a judgment or court order is entered that provides for attorneys' fees to be paid to the Client or the Client's attorneys, or a Stipulation is agreed to between the parties to the litigation which provides for attorneys' fees to be paid to the Client or the Client's counsel, the Attorneys' fees shall be the greater of (i) and (ii) below: i. a reasonable attorney's fee as awarded by the court under the state or federal statute or case law or agreed to by a settlement agreement; or ii. forty percent (40%) of the total amount recovered on behalf of the Client (including any court awarded attorney's fees).

Should a settlement offer be made, the Attorneys will attempt to have the Defendant(s) add attorneys' fees to the offer to see if the entire case can be settled at one time. If a separate fee is not contained in the offer and Defendant(s) offers a lump sum for claims which the Client decides to accept, then the attorneys' fees will be the greater of the amount calculated pursuant to the preceding paragraph or $550 per hour.

**Fair Labor/FLSA Cases.** In addition, Client acknowledges and agrees that Attorneys may deduct from any recovery obtained for Client an amount equal to the greater of: (a) 40 percent of the gross proceeds of recovery after costs and expenses are deducted, whether by settlement, judgment, or otherwise; or (b) Attorneys' and co-counsel's, if any, lodestar amount (hourly rate times hours expended). The hourly rates of Attorneys' associates and partners vary from $300 to $750. These rates may be adjusted upward annually and are available upon request.

If Client's claim is resolved on an individual basis prior to a ruling on class certification or the resolution of any appeals taken from a ruling on class certification, Client shall be obligated to pay Attorneys their hourly rates for the time they expended in the case and shall be obligated to reimburse the Attorneys for all costs and expenses incurred.

Client agrees that Attorneys may conduct settlement negotiations that include Client's claims and an amount for attorneys' fees, expenses, and costs in a manner that represents the best interests of a class or collective of clients as a whole. Client authorizes Attorneys to reject and/or accept settlement offers without obtaining additional approval. Client understands that Client will be legally bound by the terms of any settlement accepted on behalf of Client. Client may revoke this settlement authority at any time by providing Attorneys with written notice of such revocation.

**4. Cases in Litigation.** For any case that is filed in Court, Attorneys will keep their hours at their normal hourly rates of $300 to $750, depending on the case and jurisdiction. These rates may be adjusted upward annually and are available upon request. Attorneys shall have the choice to receive, after deduction and

reimbursement of costs and expenses, the greater of (i) the contingency fee amount or (ii) attorneys' fee separately negotiated or awarded by Court or Arbitrator.

**5. Costs and Expenses of Representing You.** Attorneys will advance court costs and litigation expenses. If a lump sum settlement is reached, Attorneys will deduct from Client's portion of the settlement amount litigation expenses, including investigation expenses, court costs, printing expenses, transcript and record fees, travel costs and any other costs attendant to representing you in the case. In addition, if your recovery exceeds one thousand dollars, Attorneys will have a right of reimbursement of certain other costs and expenses of representing you in the case. Such costs will include but will not be limited to (1) Westlaw legal research, (2) printing and reproduction costs, (3) mailing/postage, (4) Pacer, (5) facsimiles, (6) cost of travel which may be advanced and recovered on a case-by-case basis at Attorneys' discretion. All costs carry interest rate of 10% Client is not liable for any expenses even if the client is not the prevailing party.

**6. Jurisdiction/Venue.** Clients understands that his/her case may be prosecuted by Attorneys either in the jurisdiction where the client lives or where the defendant is located. The case may be resolved pre-litigation, through arbitration, or brought in an appropriate State or Federal Court. The Client consents to such representation.

**7. Attorney's Lien.** It is extremely rare, but sometimes lawyers and clients decide to part ways while the case is ongoing. In that case, with notice to you, we may stop representing you, for instance if we no longer believe the case is viable or if we question the truthfulness of what you tell us. If this happens, the law permits us to retain a lien for the value of our work and the costs we advanced for you. If you discharge us for any reason allowed by law, then we may assert a lien for expenses advanced and the fair value of legal work performed. If the a Client agrees to a settlement on the telephone and then fails to execute settlement agreement paperwork required to complete the agreement, the Client agrees that Attorneys may proceed with settling the matter on behalf of the Client and recover from the total amount of the settlement any amount apportioned to legal fees and costs of representing the Client.

For Car Cases Only - What Happens if you Sell Your Car? You must maintain possession of your vehicle during our representation and while the legal action is pending. If you sell, trade, dispose of, allow your vehicle to be repossessed, or lose possession of your vehicle while the action is pending or during our representation, you will lose your right to recovery under warranty law and Lemon Law. Should you sell, trade, dispose of, or allow your vehicle to be repossessed, and/or lose possession of your vehicle, we reserve the right, by your implied action, to discontinue and or withdraw your case with your permission, or with court approval. In short, no car means no recovery. You must immediately inform this office should you lose possession and/or ownership of your vehicle. Client understands that if Client loses possession and/or ownership of Client's vehicle during Attorneys' representation, Client will be responsible for compensating Attorneys for all reasonable expenses, disbursements and the fair value of legal work performed.

**8. File retention.** On request, Attorneys will return to Client any documents or property provided by Client via U.S. Mail. Attorneys may store the Client's entire file electronically and may send Client of the file in electronic form. Attorneys will not supply or store client-related communications that are not part

of the file.

**9. Check endorsement.** Attorneys may endorse any settlement check made payable to both Client and Attorneys on Client's behalf (if allowed by applicable State law), and deposit it in our Attorneys' escrow account from which settlement funds will be disbursed.

**10. Arbitration.** Any disagreements that arise between Attorneys and Client with respect to fees and costs and expenses due shall be settled by binding arbitration in the state Client resides, if permitted in Client's state law.

**11. Premature discharge.** In the event Lemberg Law is, for any reason, discharged as attorneys for the client prior to successful prosecution or settlement of the client's claims, Lemberg Law will be compensated as follows: a. If an offer of settlement has previously been made to plaintiff, Lemberg Law shall be entitled to compensation on the basis of the retainer and contingent percentages stated in this agreement based on the settlement amount offered. b. In the event that no settlement offer has been made prior to discharge of Lemberg Law, compensation will be paid by the Client, at the option of Lemberg Law, either (1.) on a pro rata basis of the above percentages on any amount ultimately recovered by client or class based upon the reasonable estimated of Lemberg Law's proportionate contribution to any ultimate judgment or settlement sum awarded or received, inclusive of all time and effort spent by you on the matter (measured by the total time expended by Lemberg Law in the case relative to that of any successor counsel) (2.) On the basis of time actually expended in the performance of legal services for the client or class, set at hourly fee prevailing at the time such services are rendered.

**12. Disclosure regarding compensation of counsel and associate attorney**. Work on Client's case will be done either by Lemberg Law Counsel admitted to in the Federal Court where the Client resides, where the case is filed or under the direct supervision and control of such Counsel. Counsel is compensated for their work either on an hourly basis, flat fee basis or on the basis of their efforts and contribution to the matter. If a Client desires the Client may request an in-person consultation with Counsel handling his/her case at Counsel's office or at a geographical location convenient to Counsel, as the case may be.

**13. State-Specific Provisions.**

**Ohio:** (a) RECOVERY. The Ohio Consumers Sales Practices Act ("OCSPA") allows an additional $200.00 statutory collection for Client. Unless Client has documented and cognizable actual damages (such as loss of work, medical expenses, or other out-of-pocket costs) $1,200.00 is the MAXIMUM possible recovery for a Client located in Ohio regardless of the total amount of the settlement. (b) NO ACTUAL DAMAGES. If this matter settles and Client has no actual damages then Attorneys will first take out all of their costs and expenses from the settlement amount. Then, the first $2,500.00 of settlement proceeds, Attorneys will be entitled to 70.0% and Client will be entitled to 30.0%, pro rata of said amount. Finally, for any remaining settlement proceeds Attorneys and Client will take a 50/50 split, but with the Client's total portion be limited to the statutory maximum of $1,200.00. (c) ACTUAL DAMAGES. If Attorneys determine that Client has documented and cognizable actual damages and Attorneys settle the case for Client, then the above formula will be used up to any settlement of $6,500.00. Any settlement amount over $6,500.00 will

be split 40% to Attorneys and 60% to Client. (d) VERDICT AT TRIAL. In the event that Attorneys obtain a verdict in Client's favor, Attorney's will petition the Court to award them attorney's fees Main office 43 Danbury Road, Wilton, Connecticut 06897 — Phone: 203-653-2250 — Fax: 203.653.3424 — Web: www.lemberglaw.com and costs. Attorneys will be limited to what the Court awards us regardless of the language of this Agreement. If the Court does not award attorney fees, then Attorneys will be entitled the fees as calculated in this Agreement.

**South Carolina:** Due to procedural and notice requirements under applicable South Carolina state statutes, Attorneys cannot assert claims under state law on your behalf without first providing notice of those claims to a state agency, which then has the opportunity to investigate before we may commence litigation. Because your claims, if meritorious, can be acted upon immediately under federal law, it is our practice to pursue only fair debt collection claims under federal statutes. By signing this agreement, you acknowledge that we will represent you only to assert claims under federal fair debt collection statutes and that we will not pursue what may be viable claims under South Carolina fair debt collection provisions.

**California:** Any dispute or claim between Client and Attorney., arising out of or relating to this agreement (including any claim for breach of this agreement, any dispute concerning fees, costs or both, any claim based upon alleged professional malpractice or misconduct and any other disagreement of any kind or description regardless of the facts or the legal theories involved) shall be resolved by binding arbitration in Sacramento, California, or the next nearest American Arbitration Association facility, and be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The giving of written notice to Client of the right to arbitration of fee disputes pursuant to California Business and Professions Code sections 6200 through 6206 and the San Francisco County Bar Association fee arbitration program shall not constitute a waiver of the right to arbitrate under this section. Client acknowledges that by agreeing to arbitration, Client is giving up the right to a jury or court trial.

**14. Tax Disclosure And Acknowledgment.** The Client is advised to obtain independent and competent tax advice regarding legal and business matters since legal and business transactions can give rise to tax consequences. Attorneys will not render any tax advice. Except in car case, as a result of the settlement that may be arrived at for your behalf, there may be a Form 1099-MISC issued to you by the defendant, per the provisions of Internal Revenue Code Section 6041, for the gross amount of the settlement obtained. If you receive such form, the gross amount needs to be reported in your annual Federal and, if applicable, State income tax returns in the year the settlement was received. We recommend that you consult with your professional tax advisor.

**15. Settlement Fund.** Client agrees that legal fees earned in the client's case may be paid either at once or structured to be received in the future over a period of years. Client agrees that disbursements of settlement proceeds may be done through a Qualified Settlement Fund.

**16. Class Actions.** Client consents that the case may be brought, in the first instance and only if appropriate, as a class action with the Client acting as lead plaintiff.

**17. Entire Agreement**. This Agreement is the entire agreement between Attorneys and Client, and it supersedes all prior agreements whether written or oral.

Signed by:

Farid Shafik

## Signature Certificate

🔒 Document Reference:   https://go.lemberg.co/aaHevS9

**LEMBERG LAW**



**Farid Shafik**
Party ID: 6194227841073152
IP Address: 70.175.215.69
VERIFIED EMAIL: fshafik@msn.com

Electronic Signature



Multi-Factor
**Digital Fingerprint Checksum**   a4fac0f83d2a6881a465894bcecf3ae7

| Timestamp | Audit |
|---|---|
| 2022-02-10 11:02:12 -0500 | Document created by JamieLyn Lorenti of Lemberg Law, 43 Danbury Road, Wilton, Connecticut. |
| 2022-02-22 06:39:10 -0500 | Document signed by Farid Shafik with drawn signature from IP Address: 70.175.215.69, using browser: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/98.0.4758.102 Safari/537.36 Edg/98.0.1108.56 |
| 2022-02-22 06:39:15 -0500 | Document signed by Lemberg Law with typed signature. |
| 2022-02-22 06:39:25 -0500 | All parties have signed document. Signed copies sent to: Farid Shafik, Sergei Lemberg, JamieLyn Lorenti, Lemberg Law. Document retained online at confidential URL: https://sign.lemberg.co/esign/view/b8197a5741b4ebb49bef7a6a52a82da6 |



This signature page provides a record of the online activity executing this contract.

Reference: b8197a5741b4ebb49bef7a6a52a82da6



**STATE OF CONNECTICUT**                    <u>EXHIBIT  8</u>
*DEPARTMENT OF CONSUMER PROTECTION*

Date: 4/26/2022

Case: 2022-726

Consumer: Shafik

Manufacturer: Aston Martin Lagonda of North America

Dear Consumer,

    The Department of Consumer Protection has conducted a review of your Request for Arbitration for the referenced case. The review indicates your case is ineligible for arbitration due to the following reason(s):

    The Connecticut lemon law covers vehicles that were either purchased or leased in the state of CT.

    In reviewing your application for arbitration, the lease agreement, bill of sale and the vehicle registration form all show the "lessor" as Aston Martin of San Diego 7820 Balboa Ave. San Diego CA 92111.
Therefore, the case does not meet the criteria set forth under Chapter 743b Sec. 42-179.

I apologize for any inconvenience.

Sincerely,

*Timothy J. Clark*

Timothy J. Clark
Automobile Dispute Settlement Program

Telephone:
1-800-538-2277
860-713-6134
FAX-860-706-1224

450 Columbus Boulevard, Suite 901, Hartford, Connecticut 06103-1840
General Information (860) 713-6100
Website: ct.gov/dcp
*An Affirmative Action / Equal Opportunity Employer*

Please complete, sign and submit the form
by Fax: 1-877-501-7620

Or mail:  Chase Auto
700 Kansas Lane
Mail Code LA4-4025
Monroe, LA 71203

# EXHIBIT   9

## ODOMETER DISCLOSURE STATEMENT (LEASED VEHICLES)

Federal law (and State law, if applicable) requires that the lessee disclose the mileage to the lessor in connection with the transfer of ownership. Failure to complete or making a false statement may result in fines and/or imprisonment.

When returning or purchasing your leased vehicle, please complete, sign and return disclosure form below to JPMorgan Chase Bank, N.A.

I __Farid Shafik__ (print name of person making disclosure),
state that the odometer now reads __3,731__ (no tenths) miles.
I further state the following (please place a checkmark next to **only one** of the following statements):

[✓] I certify that, to the best of my knowledge, the above-listed odometer reading reflects the **ACTUAL MILEAGE** of the vehicle described below.

[ ] I certify that, to the best of my knowledge, the above-listed odometer reading reflects the amount of mileage **IN EXCESS OF ITS MECHANICAL LIMITS.**

[ ] I certify that the above-listed odometer reading is **NOT** the actual mileage.

CALIFORNIA LESSEES: I certify, under penalty of perjury under the laws of the State of California, the foregoing odometer information is true and correct.

| Year | Make | Model | Vehicle Identification Number (VIN) |
|------|------|-------|-------------------------------------|
| 2019 | ASTON MARTIN | DB11 VOLANTE | SCFRMFCW7KGM06514 |

Body Type (select one): [✓] Convertible  [ ] Coupe  [ ] Sedan  [ ] SUV  [ ] Truck  Other _____

### Lessee's Name and Address Information:

Lessee Name:  Farid Shafik

Lessee Address:  357 Andrews St.

| City | State | Zip |
|------|-------|-----|
| Southington | CT | 06489 |

Lessee's Signature:  _(signature)_

Date of Statement:  10/8/22

The Odometer Disclosure Statement cannot be altered in any way.  Please do not strike through any information, use white-out, or check any incorrect boxes.  If any information needs to be corrected, please use a new form.

**DO NOT WRITE BELOW THIS LINE**

Lessor's Name:  JPMorgan Chase Bank, N.A.

Lessor's Address:  Chase Auto, 700 Kansas Lane, Mail Code LA4-4025, Monroe, LA 71203

Date Disclosure Form sent to Lessee: _____

Date Completed Disclosure Form Received from Lessee: _____

Lessor's Signature: _____

Name and Title: _____

Version 3.B
(21-047-F) 8/21

*Farid F. Shafik, MD, FACS*

# EXHIBIT 10

*Damages Associated with Aston Martin Lagonda of North America*
*Loss of Use of Vehicle (1)*
*2019 Aston Martin DB11 CPE/Conv*
<u>*VIN: SCFRMFCW7KGM06514*</u>
*Car returned:  10/8/2022;  mileage at end of lease:  3731*

| | AMOUNT | FACTOR | NET AMOUNT | Comments |
|---|---|---|---|---|
| Monthly Lease Payments (1) | $ 2,600.00 | 36 $ | 93,600.00 | payments made thru 9/1/2022 |
| License/Reg. Fee/transportation costs/capitalized cost reduction/Tire&Rim Warranty /1st month payment/title fees/elec. Filing charge--Bulk payment (2) | $ 5,000.00 | 1 $ | 5,000.00 | full value as the services were deficient unregistered vehicle was shipped across states lines.  Received non-compliant goods |
| Property Tax (5) | | $ | 11,679.12 | Connecticut State/Town of Southington (36 mo. Term of Lease) |
| Car Insurance/ pro rata relative to 10/15/2019 - 10/8/2022  (3) | $ 1,520.00 | 3 $ | 4,560.00 | |
| Attorney Fees (4) | $250.00 | 1 $ | 250.00 | |
| Emotional Damages/Aggravation | $ 20,000.00 | 1 $ | 20,000.00 | emails/paperwork/time utilized/phone calls/travel time/etc. |
| **Total Damages (A)** | | **$** | **135,089.12** | |

**(A)  In addition to these amounts, I reserve the right to withdraw**
**this proposed settlement and pursue all civil and criminal damages available to**
**the fullest extent of the law.**
**(1)  Car was leased on 10/1/2019, payments through 9/1/2022.**
**(2) Registration not received until 12/6/2019; payment was made in bulk for items**
**(3)  Car insurance is based on  36 months**
**(4)  Receipt available**
**(5) May be revised relative to return date and/or lease void**